# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 09-3065

OLARONKE OLUFUNMILAYO CHAMPION,
also known as OLARONKE ADEYEMI,

*Petitioner,*

*v.*

ERIC H. HOLDER, Jr., Attorney General
of the United States,

*Respondent.*

_____

Petition for Review of an Order
of the Board of Immigration Appeals
No. A072-571-274

_____

ARGUED MAY 19, 2010—DECIDED NOVEMBER 22, 2010

_____

Before O'CONNOR[1], *Associate Justice*, and WILLIAMS and
SYKES, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Olaronke Champion, a citizen of
Nigeria, legally entered the United States in 1988. The

_____

[1] The Honorable Sandra Day O'Connor, Associate Justice of the
United States Supreme Court (Ret.), sitting by designation
pursuant to 28 U.S.C. § 294(a).

government initiated removal proceedings against her in 2005. Champion applied for cancellation of removal based on the hardship that would result to her minor children if she would be deported. The immigration judge ("IJ") denied her application, in part because he concluded that other family members, including the children's father who was also under removal proceedings, were available to support the children in the event that Champion was deported. The Board of Immigration Appeals ("BIA") affirmed the denial of relief, and Champion petitioned this court for review. We affirm the BIA's findings with respect to Champion's due process claims because she had a full opportunity to present her case and the IJ did not consider improper information. However, because the BIA did not address Champion's claim that the possibility of the deportation of the children's father would constitute an extremely unusual hardship, we remand for further consideration.

## I. BACKGROUND

Olaronke Champion is a native and citizen of Nigeria. She entered the United States in 1988 under a tourist visa. In 1991, she married a United States citizen and applied for status adjustment based on her marriage. Immigration and Naturalization Services denied her application, finding that Champion had failed to provide sufficient evidence that an earlier Nigerian marriage had been officially terminated. In 2005, the government commenced removal proceedings against Champion. The government initially charged her with committing visa fraud under the Immigration and

Nationality Act ("INA") § 212(a)(6)(C)(i) based on the government's belief that Champion had submitted a fraudulent Nigerian divorce decree in conjunction with her application for status adjustment. The government twice amended these charges, first alleging that she had attempted to enter the United States without a valid entry document in violation of INA § 212(a)(7)(A)(i)(I), and then asserting that she had overstayed her visa in violation of INA § 237(a)(1)(B). Ultimately, the government only pursued the charge concerning Champion's stay in the United States past the expiration of her visa.

Champion conceded removability but requested cancellation of removal under 8 U.S.C. § 1229b(b)(1).[2] At her hearing before the IJ, the government stipulated that Champion satisfied the cancellation requirements for moral character, lack of convictions, and physical presence for cancellation, leaving "exceptional or extremely unusual hardship" to her family as the sole issue before the court. As grounds for finding exceptional hardship, Champion testified that she was the primary caregiver for her two minor daughters, Tomi and Toni Adeyemi (aged 14 and 11

---

[2] Section 1229b(b) provides relief from removal proceedings if an alien establishes: (1) continuous presence in the United States for at least 10 years immediately preceding the cancellation application; (2) good moral character for that time period; (3) no convictions for any offense under §§ 1182(a)(2), 1227(a)(2), and 1227(a)(3); and (4) "that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." 8 U.S.C. § 1229b(b)(1).

at the time), both of whom were born in the United States. Champion stated that she was concerned about taking her daughters to Nigeria not only because it would be very foreign to them, but also because she feared that they might be subjected to female circumcision. Champion also has a son, Tobi, who was 20 years old at the time and was attending college in New York. Tobi was also under removal proceedings. Champion and her two daughters share a home in Hinsdale, Illinois with Champion's Nigerian ex-husband, Yomi Adeyemi, who is also the father of the three children. Champion explained that she and Yomi came to the United States together, after which he became a physician and she a registered nurse. According to Champion, Yomi has played an active role in supporting the children emotionally and financially. As for the rest of Champion's relatives in the United States, she has three siblings who have obtained lawful resident status, including two sisters who reside in Illinois and a brother who lives in Atlanta.

At the end of the hearing, Champion's attorney requested closing argument, but the IJ declined, saying that he "would ask [counsel] to reserve on the closing argument" because there were "no significant issues of law or really even fact, that needed to be discussed." The IJ then asked whether there was "anything else before he issue[d] an oral decision," and Champion's attorney did not reply.

The IJ determined that Champion had not demonstrated that she qualified for cancellation of removal because she had not shown that her daughters would suffer the requisite exceptional or extremely unusual hardship if she were

removed. The IJ specified that the children could still rely on their father's support in the United States as well as that of other close relatives. Champion appealed, arguing that the IJ failed to consider a number of factors important to the hardship analysis, including Yomi's potential deportation. Champion also asserted that her due process rights were violated when the IJ refused to allow closing argument and when he referenced the marriage fraud allegation. The BIA adopted and affirmed the IJ's findings. Champion now petitions this court for review.

## II. ANALYSIS

Where, as here, the BIA affirms the IJ's decision and supplements with its own explanation for denying the appeal, we review the IJ's decision as supplemented by the BIA's reasoning. *Juarez v. Holder*, 599 F.3d 560, 564 (7th Cir. 2010). Before we turn to the merits, however, we must first consider whether we have jurisdiction to review the IJ's discretionary and factual determination that Champion was ineligible for cancellation of removal. Generally, we do not have jurisdiction to evaluate discretionary decisions made by the Attorney General, *see* 8 U.S.C. § 1252(a)(2)(B)(i). So we lack jurisdiction over the BIA's ultimate determination that Champion was ineligible for cancellation of removal. Nonetheless, under 8 U.S.C. § 1252(a)(2)(D), we retain jurisdiction to review constitutional claims and questions of law raised in a petition for review.

We conclude that one of Champion's central arguments on appeal—that the BIA failed to consider the impact of

Yomi's potential removal—is a question of law appropriate for our review. In large part, the BIA and the IJ based their finding that Champion's children would not suffer extreme hardship on an assumption that Yomi, the children's father, would be available to emotionally and financially support the children if Champion were deported to Nigeria. At several points in the IJ's oral ruling, he referenced Yomi's profession as a "physician in Chicago," saying that "Tomi and Toni can rely on their father's support". The IJ went on to recount Yomi's salary and the various ways in which he had financially supported Champion and their children over the years, including lending Champion $40,000 to use as the down payment for the family's home and his contributions to the monthly mortgage.[3] The BIA also appeared to assume that Yomi would continue to be a source of support for the children in the event that Champion is deported. For instance, the BIA stated that "[i]t also appears that the two children would likely have the companionship and assistance of their father and two aunts, all of whom live either with or near them," and in a separate part of the opinion, again noted that Yomi "is a physician and he could conceivably provide continued financial support."

We find that Champion's allegation that the BIA ignored the evidence she presented concerning Yomi's potential deportation was a good faith claim of legal error that we may review. As we have previously held, "a claim that the

---

[3]   The IJ cursorily mentioned that Yomi is under removal proceedings, but only did so in the context of hypothesizing about why he and Champion had not yet remarried.

BIA has completely ignored the evidence put forth by a petitioner is an allegation of legal error." *Iglesias v. Mukasey*, 540 F.3d 528, 531 (7th Cir. 2008). And the "failure to exercise discretion or to consider factors acknowledged to be material to such an exercise—such as the wholesale failure to consider evidence—would be an error of law . . . ." *Id.* (citations and internal quotation marks omitted). Here, both the IJ and the BIA virtually ignored the possibility that Yomi could also be deported, an oversight that we have found may warrant remand. *See, e.g.*, *Kone v. Holder*, 620 F.3d 760, 765 (7th Cir. 2010) (remanding to BIA to determine, *inter alia*, whether petitioner had a claim for constructive deportation when both parents were under removal proceedings). Finding that the BIA erred by failing to consider the impact of Yomi's potential deportation, we remand this matter in order for the BIA to address this critical component of the hardship analysis.[4]

Champion also attempts to raise two constitutional claims, alleging that she was deprived of due process when the IJ refused to allow her to present a closing argument and when he referenced the visa fraud allegation in his oral decision. Both arguments fail because Champion has not articulated a protected liberty or property interest and, in

---

[4]   However, we find that the BIA's determination that Champion had clearly indicated her intention to leave her children in the United States was supported by substantial evidence. As the BIA found, Champion indicated her intent to leave her daughters in the United States in her application for cancellation and during her testimony at the hearing.

any event, she was afforded due process. To articulate a due process claim, Champion must demonstrate that she has a protected liberty or property interest under the Fifth Amendment. *See Khan v. Mukasey,* 517 F.3d 513, 518 (7th Cir. 2008) ("[I]t is well-established that a party complaining of a due-process violation must assert a liberty interest in order to maintain [her] due-process claim."). Aliens have a Fifth Amendment right to due process in some immigration proceedings, but not in those that are discretionary. *Id.* (no due process right in "proceedings that provide only . . . discretionary relief because an appeal to discretion is not a substantive entitlement") (citation and internal quotation marks omitted). Because cancellation of removal is a discretionary form of relief, it does not confer onto Champion a liberty or property interest.

Even assuming Champion had a protected interest, a review of the record indicates that she was afforded due process. Champion first claims that she was denied due process when the IJ refused to allow her to give a closing argument. But immigration judges have wide discretion to "receive and consider material and relevant evidence, rule upon objections, and otherwise regulate the course of the hearing," 8 C.F.R. § 1240.1(c), and declining to allow a closing argument after extensive testimony and argument is within the judge's broad authority. *See Yap v. Immigration and Naturalization Service,* 318 F.2d 839, 841 (7th Cir. 1963) (holding that immigration adjudicator did not abuse discretion by ruling on alien's deportability before hearing closing argument). The IJ's refusal to allow closing argument does not contravene the INA's requirement that aliens "have a reasonable opportunity to examine the

evidence against [them], to present evidence on [their] own behalf, and to cross-examine witnesses presented by the Government . . . ." 8 U.S.C. § 1229a(b)(4)(B). Here, it does appear that Champion had a full opportunity to present evidence, as demonstrated by her own testimony and that of her eldest daughter, Tomi, which detailed Champion's background and the ways in which her deportation would adversely affect her children. Thus, while it might have been preferable for the IJ to allow a closing statement, his decision not to do so did not violate any statutory or regulatory requirements, and, therefore, did not deprive Champion of due process. *See Juarez*, 599 F.3d at 566 ("[I]mmigration proceedings satisfy due process so long as they conform to the applicable statutory and regulatory standards . . . ."); *Ndonyi v. Mukasey*, 541 F.3d 702, 709 (7th Cir. 2008) ("[I]mmigration proceedings that meet statutory and regulatory standards comport with due process and, as such, aliens are better-served by arguing instead that immigration proceedings infringed upon the statutory and regulatory right to a reasonable opportunity to present evidence.") (citation and internal quotation marks omitted).

Finally, Champion's claim that the IJ's passing references to the visa fraud allegation violated due process also lacks merit. There is no indication that the IJ took the alleged marriage fraud into consideration when making his ultimate decision. At most, the IJ referred to the allegations during his summary of the testimonial and documentary evidence at the beginning of his decision. He stated:

> The respondent's immigration history includes a belief, by the government, that the respondent,

back in Nigeria perpetrated some type of fraud in connection with a divorce petition overseas. . . . As previously indicated, because these allegations occur outside of the 10-year period, they have not been fully discussed for the record.

The IJ's use of the terms "allegations" and "belief by the government" indicate that he did not necessarily accept the allegations as true, but rather was merely restating them to provide context. At no point in his discussion of whether Champion had demonstrated "exceptional or extremely unusual hardship"—the sole issue in contention at the hearing—did the IJ ever reference the alleged fraud. And his passing reference to the allegation does not indicate that he relied on it in making his hardship determination, which distinguishes this case from *Zhang v. Gonzales*, 434 F.3d 993 (7th Cir. 2006), on which Champion relies. There, we found that the IJ had inappropriately "dwelled at length" on charges of visa fraud (which the government had subsequently withdrawn) as the basis for his adverse credibility determination. *Id.* at 997. In contrast, the IJ here only made brief mention of the earlier fraud allegations when explaining the background of the case, and he never indicated that the withdrawn charge had any bearing on his ultimate decision. Based on this record, we do not believe that the IJ considered the fraud allegations when making his hardship determination.

### III.  CONCLUSION

We AFFIRM the BIA's decisions as to Champion's due process claims. With respect to the hardship analysis

under 8 U.S.C. § 1229b(b)(1)(D), we GRANT the petition for review, VACATE the BIA's decision, and REMAND for further proceedings consistent with this opinion.