In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-1397

PAUL KIORKIS,

*Petitioner*,

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent*.

Petition for Review of an Order of
the Board of Immigration Appeals.
No. A046 101 699.

ARGUED OCTOBER 19, 2010—DECIDED FEBRUARY 28, 2011

Before CUDAHY and ROVNER, *Circuit Judges*, and
ADELMAN, *District Judge*.[*]

CUDAHY, *Circuit Judge*. In 2007, the Department of
Homeland Security placed Paul Kiorkis, a Lebanese
citizen who had been legally residing in the United States

_____

[*] The Honorable Lynn Adelman, District Judge for the Eastern
District of Wisconsin, sitting by designation.

for over a decade, into removal proceedings due to his prior conviction for possession of a controlled substance. Kiorkis conceded that he was removable, but filed an application seeking asylum and other forms of relief. An immigration court denied his request for asylum after conducting a full merits hearing, finding that Kiorkis had failed to establish that he had a well-established fear of future persecution on the basis of a statutorily-protected ground. Kiorkis appealed the immigration court's decision to the Board of Immigration Appeals (BIA). A one-member panel of the Board denied Kiorkis's appeal and affirmed the immigration court's analysis in its entirety. Kiorkis filed an appeal with this court, alleging that the immigration court and the Board failed to consider all of his future persecution claims. We affirm the decisions below.

## I. Background

Paul Kiorkis is an Assyrian Christian who was born in Beirut, Lebanon in 1984. Twelve years later, Kiorkis—along with his father, mother and four siblings—obtained an immigrant visa and entered the United States as lawful permanent residents. After moving to the United States, the Kiorkis family settled in the greater Chicago area and, except for a few members who have relocated to Michigan, remain in Illinois to this day. Over the past 14 years, all of the Kiorkis family members, except the appellant, have succeeded in obtaining full U.S. citizenship.

After immigrating to the United States, Kiorkis remained a lawful permanent resident in good standing

with the law for several years. Eventually, however, Kiorkis ran afoul of the law. In 2003, he pleaded guilty to unauthorized possession of a controlled substance and was sentenced to two years of probation, which it appears he completed without incident. This conviction came back to haunt Kiorkis in 2007 when he applied for naturalization. When reviewing Kiorkis's application, the Department of Homeland Security (DHS) discovered his prior conviction and used it as grounds for denying his application. DHS also instituted removal proceedings against Kiorkis at this time, seeking to remove him from the United States pursuant to section 237(a)(2)(B)(I) of the Immigration and Nationality Act (INA). 8 U.S.C. § 237(a)(2)(B)(I) (providing for the removal of aliens who have been convicted for violating controlled substance laws).

In March 2008, Kiorkis appeared for his initial hearing before the immigration court and was granted an extension so that he could obtain representation. In August 2008, Kiorkis failed to appear at the second hearing and the court ordered him *in absentia* removed. The court rescinded its order upon Kiorkis's timely filing of a motion to reopen and continued the hearing to January 2009. At this hearing, Kiorkis conceded that he was removable.

In February 2009, Kiorkis submitted an application for asylum, withholding of removal and protection under the Convention Against Torture. In his asylum application, Kiorkis stated that certain aspects of his identity made him a likely target of future persecution

at the hands of Hezbollah and the Lebanese government. In April 2009, Immigration Judge Ipema presided over a merits hearing concerning his application. At the conclusion of the hearing, Judge Ipema denied all of Kiorkis's requests and ordered his removal to Lebanon.

In May 2009, Kiorkis appealed Judge Ipema's order to the BIA. Two months later the BIA determined that the transcript from Kiorkis's hearing contained too many indiscernible notations to permit appellate review and remanded the case for further consideration. In September 2009, Immigration Judge Kessler presided over a second merits hearing regarding Kiorkis's claims. At the conclusion of the hearing, Judge Kessler granted Kiorkis's request for voluntary departure, but denied all of Kiorkis's other requests for relief.

Kiorkis filed a timely appeal from Judge Kessler's decision with the BIA. In January 2010, after receiving briefing from both parties, the BIA affirmed the decision below and dismissed the appeal. Kiorkis asks this court to review the BIA's decision, alleging that both the BIA and Judge Kessler erred in denying his requests for relief.

## II. Discussion

Because the BIA dismissed Kiorkis's appeal in a single-member opinion that agreed with the immigration judge's analysis, the immigration judge's opinion "as supplemented by the Board's opinion becomes the basis of review." *Raghunathan v. Holder*, 604 F.3d 371, 378 (7th Cir. 2010). Before analyzing the merits of each of

Kiorkis's claims, however, we must first consider the extent to which we have jurisdiction over this appeal. Kiorkis has conceded that he is removable from the United States due to his commission of a drug-related criminal offense. When an individual is removable on such grounds, section 1252(a)(2)(C) of the INA severely curtails our ability to review the decisions of the immigration court and the BIA. 8 U.S.C. § 1252(a)(2)(C) (stating that "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed" certain criminal offenses); *see also Aguilar-Mejia v. Holder*, 616 F.3d 699, 703 (7th Cir. 2010). While we are prohibited completely from questioning the factual determinations made by either body, a subsequent provision of the INA states that we retain the authority to review the agency's determinations for legal errors. 8 U.S.C. § 1252 (a)(2)(D) (stating that courts retain jurisdiction to hear appeals raising "constitutional claims or questions of law"); *see also Khan v. Filip*, 554 F.3d 681, 688 (7th Cir. 2009); *Li Fang Huang v. Mukasey*, 534 F.3d 618, 620 (7th Cir. 2008). We review the legal determinations of the immigration court and the BIA de novo, with deference to the agency if the issue involves an ambiguous section of the INA or an interpretation of agency regulations. *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999); *Auer v. Robbins*, 519 U.S. 452, 461-62 (1997).

On appeal, Kiorkis alleges that the immigration court and the BIA erred in three distinct ways: (1) they failed to acknowledge his Hezbollah-related fear of future

persecution claims; (2) they ignored his fear of future persecution claims that were not related to his religion; and (3) they applied the wrong evidentiary standard when determining that he had not shown a likelihood of future persecution.

## A. Kiorkis's Hezbollah-related Claims

Kiorkis's first argument on appeal contends that Judge Kessler and the BIA considered only whether Kiorkis had a well-founded fear of future persecution at the hands of the Lebanese government and failed to address his claims concerning persecution at the hands of Hezbollah. He also argues that section 1252(a)(2)(C) of the INA does not limit our ability to review the decisions below for these errors as they constitute legal, rather than factual, errors.

In prior cases where our jurisdiction has been restricted by section 1252(a)(2)(C), we have acknowledged "that the line between legal questions—which we can review—and discretionary factual determinations—which we cannot—is occasionally difficult to draw." *Khan v. Filip*, 554 F.3d at 688. It is clear that we are not prevented from reviewing "an argument that necessarily implicates a claim of legal error, such as an allegation that the BIA failed to exercise discretion at all by completely ignoring an argument." *Iglesias v. Mukasey*, 540 F.3d 528, 530-31 (7th Cir. 2008); s*ee also Mansour v. INS*, 230 F.3d 902, 908 (7th Cir. 2000) (stating that agencies are required to respond to the arguments that they are

presented with). However, it is also clear that we are prohibited from reviewing "factual determinations or the manner in which the agency weighed the various factors that inform the exercise of discretion" or from hearing claims that merely allege that the immigration court "failed to apply the law." *Aguilar-Mejia*, 616 F.3d at 703; *Khan*, 554 F.3d at 689. Insofar as Kiorkis is alleging that the immigration court and the BIA completely failed to consider his Hezbollah-related claims (as opposed to claiming that these bodies exercised their discretion, but did so improperly), we find that the jurisdiction-stripping provisions of the INA are not applicable and that it is proper for us to review the decisions below.

After reviewing Judge Kessler's and the BIA's decisions, we find that Kiorkis's allegations concerning his Hezbollah-related claims are not supported by the record. The BIA and the immigration courts are entitled to a presumption of regularity concerning their resolution of claims and applicants appealing from their decisions bear the burden of establishing that an error occurred. *Rhoa-Zamora v. INS*, 971 F.2d 26, 33-34 (7th Cir. 1992). Further, while we have remanded immigration cases "because an absence of analysis left us uncertain that a claim had been fully understood," we have also recognized that it is impossible for immigration courts to "write an exegesis on every contention an applicant raises." *Dobrota v. INS*, 195 F.3d 970, 974 (7th Cir. 1999).

At the end of the merits hearing, Judge Kessler noted evidence submitted by the parties discussing "ongoing sectarian violence and other problems in Lebanon,"

including a United Nations report indicating that Lebanon's government generally respects religious freedom and a U.S. State Department report discussing the dangers posed by Hezbollah in Lebanon. She also discussed Kiorkis's history with and present fears of Hezbollah. It is true that Judge Kessler did not explicitly distinguish between Kiorkis's claims concerning Hezbollah and those involving the Lebanese government when finding that Kiorkis had not demonstrated a well-established fear of future persecution; however, this failure does not constitute reversible error.[1] The record establishes that Judge Kessler understood Kiorkis's Hezbollah-related claim, that she considered the evidence before her and that she found it was insufficient to support granting Kiorkis's request for asylum. Hence, it is clear that the immigration court did not commit a legal error by ignoring Kiorkis's claim.

### B. Kiorkis's Non-Religious Future Persecution Claims

Kiorkis also argues that the decisions below should be reversed because Judge Kessler and the BIA failed to consider three of the four statutorily-protected grounds that he identified as providing a basis for his fear of persecution claims. More specifically, Kiorkis alleges that

---

[1] The immigration court's decision to address these claims jointly is particularly understandable given that Kiorkis indicated in both his brief and his testimony that Hezbollah has infiltrated the Lebanese government and effectively controls many of its decisions.

the immigration court and the BIA did not consider whether his status as an Assyrian, a Westernized/Americanized individual and a member of a family with a history of opposing Hezbollah supported a finding that he possesses a well-founded fear of future persecution. He contends that these omissions constitute legal errors and, hence, that they can properly be reviewed by this court.

Because Kiorkis's second argument, like his first, alleges that the immigration court and the BIA completely ignored his claims, section 1252(a)(2)(C) of the INA does not bar us from reviewing the decisions below. *Iglesias*, 540 F.3d at 530-31. While we cannot question the validity of Judge Kessler's or the BIA's factual determinations or the weight that they attributed to the parties' evidence, a complete failure to consider Kiorkis's arguments constitutes grounds for reversal. *Id.*; *Khan*, 554 F.3d at 689.

Our review of the opinions issued by Judge Kessler and the BIA leaves us convinced that Kiorkis's fear of future persecution claims were not ignored. We begin by noting that Kiorkis's claim concerning his Assyrian identity was not raised below and, as such, is not properly before this court. In the brief that he submitted to Judge Kessler prior to his merits hearing, Kiorkis stated that he had a well-founded fear of future persecution on account of his Christianity, family membership, political views and American identity. When Kiorkis appealed Judge Kessler's ruling to the BIA, he stated that he feared persecution on three grounds—"(1) as a Christian, (2) as one who is pro-Americanized and pro-

Western, and (3) as a member of a family who was perse-
cuted by Hezbollah in the past." Because Kiorkis
did not assert that his ethnicity provided an in-
dependent basis for finding a fear of future persecution
until filing his briefs with this court, the immigration
court and the BIA did not err by not addressing this
claim. *See Mekhitav v. Holder*, 559 F.3d 725, 729 (7th Cir.
2009).

Given the novelty of Kiorkis's ethnicity-based claim and
his concession that the immigration court and the BIA
considered his Christianity-based claim, we are left to
decide whether these bodies gave sufficient considera-
tion to his Americanized/pro-Western identity and
family membership claims. When delivering her opinion,
Judge Kessler discussed Kiorkis's contentions that his
American point of view and other distinctly Western
characteristics would put him at risk for future persecu-
tion, noting that one of his primary claims for relief
was "related to the fact that he ha[d] been effectively
Americanized." Judge Kessler also stated that Kiorkis
had testified that he was "afraid of Hezbollah because
of his uncle fighting against them, and his father being
shot" and that he feared "being tortured by Hezbollah
because his family has fought against them." After ac-
knowledging these claims and reviewing the evidence
that the parties had submitted, she held that,

> [a]lthough [Kiorkis] certainly has some concerns
> and although the well-founded fear standard is a low
> standard, I cannot conclude . . . that it has been demon-
> strated that there is . . . [a] ten percent chance or so
> that he himself would suffer harm that rises to the

level of persecution, or that any such harm he fears *would be on account of his membership in a particular social group.*

(emphasis added). Given all of this, it is clear that the immigration court considered Kiorkis's fear of future persecution claims based upon his Americanized/pro-Western and family group identities, but found them unconvincing and entered a judgment that dismissed both claims.

We caution, however, that our holding should not be interpreted as an unqualified endorsement of the immigration court's decision. Although we recognize practical limitations, Judge Kessler might have discussed each of Kiorkis's claims in greater depth and elaborated on the reasons why she was rejecting each claim. Section 1252(a)(2)(C)'s limitation of our jurisdiction, however, implies some restriction on the severity of our critique of how Kiorkis's social group claims were handled. To the extent such a critique requires reviewing the factual determinations of the immigration court, section 1252(a)(2)(c) restricts its scope.

## C. Evidentiary Standard

Kiorkis's final argument alleges that the immigration court and the BIA applied an incorrect evidentiary standard when deciding whether to grant his asylum application. He argues that the judgments entered by both adjudicative bodies should be reversed because they did not weigh the totality of his circumstances, failed to consider all of his future persecution claims in the

context of one another and improperly focused on a single piece of evidence.

Kiorkis's argument concerning the evidentiary standards applied by the immigration court is not supported by the record.[2] Kiorkis has failed to identify any part of Judge Kessler's opinion that indicates that she did not weigh the totality of Kiorkis's circumstances or that she considered his claims in isolation when deciding whether she should grant his request for asylum. While Kiorkis suggests that the immigration court's heavy emphasis on his Christianity-based claims allow us to infer that the court made these errors, doing so would conflict with both this circuit's practice and a plain language reading of Judge Kessler's opinion. *Rhoa-Zamora*, 971 F.2d at 33-34.

### III. Conclusion

For all of the reasons set forth above, the ruling of the district court is

AFFIRMED.

---

[2] We have jurisdiction over these issues as an appellant's allegation that a court applied the incorrect legal standard falls squarely within the "questions of law" exception to section 1252(a)(2)(C)'s jurisdictional restrictions. *Joseph v. Holder*, 579 F.3d 827, 829 (7th Cir. 2009).

---