# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-2444

JOSE A. MUNOZ-PACHECO,

*Petitioner*,

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent*.

Petition for Review of an Order of
the Board of Immigration Appeals.
No. A031-404-290.

ARGUED JANUARY 25, 2011—DECIDED MARCH 14, 2012

Before BAUER, POSNER, and ROVNER, *Circuit Judges*.

POSNER, *Circuit Judge*. The petitioner, a Mexican citizen who has lived in the United States for many years and is a lawful permanent resident of this country, was ordered removed (deported) because of two Illinois convictions for possessing and trafficking in cocaine. He sought cancellation of removal, which the Attorney General (actually the Board of Immigration Appeals, as

his delegate) may order if the applicant has been a lawful permanent resident of the United States for at least five years and has resided here for at least seven years and has not been convicted of an aggravated felony. 8 U.S.C. § 1229b(a). The petitioner satisfies these prerequisites—even the last, because, as the parties stipulated, although his two Illinois drug convictions were for felonies, they were not aggravated felonies within the meaning of section 1229b(a). See *Carachuri-Rosendo v. Holder*, 130 S. Ct. 2577, 2589 (2010); *Lopez v. Gonzales*, 549 U.S. 47, 60 (2006). But the Board denied the application, affirming the immigration judge and citing, as had the immigration judge, the petitioner's long history of arrests and convictions. He asks us to vacate the denial of his application on the ground that the Board ignored a critical mitigating factor.

Cancellation of removal is discretionary, and the petition for review presents us with the recurring and as yet not fully resolved issue of when a court of appeals has jurisdiction to review a discretionary ruling in a cancellation of removal proceeding, or in some other proceeding seeking discretionary relief from removal.

The Board has ruled that the exercise of discretion in these contexts requires a balancing of aggravating and mitigating factors, and that one of the mitigating factors that the Board must consider if asked to do so by the applicant is hardship to members of the applicant's family. *In re C-V-T*, 22 I. & N. Dec. 7, 11 (BIA 1998); *Estrada v. Holder*, 604 F.3d 402, 407 (7th Cir. 2010). The petitioner's parents, wife, and children all live in the

United States and are U.S. citizens, and they do not plan to relocate to Mexico if the petitioner is sent back there. There is uncontradicted testimony—which so far as we can determine neither the Board nor the immigration judge disbelieved—that the parents would be afraid to visit the petitioner in his hometown in Mexico, to which he will return if removed, because Mexico's endemic drug-related violence is especially prevalent there.

The town is referred to in the record as "West Collantes." But as far as we've been able to determine, there is no such town—neither a "West Collantes" nor a "Collantes"—and certainly no such town that has "more than one million people," as the petitioner's father testified. The petitioner's sister testified that the family's hometown "is a small hometown . . . called West Collantes." In fact the petitioner's birthplace and that of his parents and thus his and their hometown is Aguascalientes, which *is* a big city—its population exceeds 600,000—and we are guessing that "West Collantes" is a neighborhood of Aguascalientes. There apparently is a great deal of violence in Aguascalientes, even by Mexican standards. See, e.g., U.S. Department of State, Bureau of Consular Affairs, "Travel Warning: Mexico," Feb. 8, 2012, http://travel.state.gov/travel/cis_pa_tw/tw/tw_5665.html; Hugo Martin, "U.S. Travel Warning on Mexico Is More Precise on Violent Areas," *Los Angeles Times*, Feb. 9, 2012, p. B4, www.latimes.com/business/money/la-fi-mo-travel-warning-20120209,0,3903495.story; Todd Bensman, "Gunrunners' Land of Plenty," *San Antonio Express-News*, Nov. 30, 2008, p. 1A, www2.mysanantonio.com/gun_run/index.html; Alfredo Corchado, "More Mexicans Flee

to Texas," *Chicago Tribune*, Oct. 15, 2009, p. C23, http://articles.chicagotribune.com/2009-10-15/news/ 0910150259_1_mexicans-drug-traffickers-flee (all visited Mar. 3, 2012). Neither the Board nor the immigration judge suggested that the petitioner could or should relocate to a safer part of Mexico, if there is a safer part.

The immigration judge and the Board acknowledged that forcing the petitioner to return to Mexico would impose a hardship on his family, but the immigration judge mentioned only in passing, and the Board not at all, the hardship to the parents of being unable to visit the petitioner because of the violent conditions in the locale to which he'd be returning. We must decide whether we have jurisdiction to review the Board's refusal to cancel the petitioner's removal because of the Board's oversight, which possibly was the immigration judge's as well. For while she mentioned the testimony about the parents' being deterred by fear of violence from ever visiting the petitioner in Mexico, she did not *discuss* the issue—did not say that it was or was not a significant hardship, but only that in any event it was, along with the other hardships testified to, outweighed by his formidable criminal record and other negative factors, including a propensity (in tension with the testimony about the hardship to his family if he is sent back to Mexico) to domestic violence not fully reflected in his lengthy record of arrests and convictions.

That this should be a question of our jurisdiction rather than of the merits of the petition for review derives from 8 U.S.C. § 1252(a)(2)(B), which read in con-

junction with subsection (D) precludes judicial review of the denial of cancellation of removal unless the petition presents "constitutional claims or questions of law." Subsection (B) is captioned "Denials of discretionary relief," and so we have to distinguish between a denial of discretionary relief that is, and one that is not, based upon a question of law presented to us (or a constitutional claim, but the petitioner doesn't make such a claim).

The usual standard of judicial review of discretionary determinations is abuse of discretion or, the equivalent term (see *Morales v. Yeutter*, 952 F.2d 954, 957-58 (7th Cir 1991); also *EuroPlast, Ltd. v. NLRB*, 33 F.3d 16, 17 n.\* (7th Cir. 1994)) used when the determination is made by an administrative law judge or administrative agency rather than by a district judge, lack of substantial evidence on the record considered as a whole. *Vahora v. Holder*, 626 F.3d 907, 912-13 (7th Cir. 2010); *Milanouic v. Holder*, 591 F.3d 566, 571 (7th Cir. 2010); *Floroiu v. Gonzales*, 481 F.3d 970, 975-76 (7th Cir. 2007) (per curiam). Therefore abuse of discretion cannot be a question of law within the meaning of 8 U.S.C. § 1252(a)(2)(B), for then subsection (B) would have no force at all; the scope of judicial review would be the same as it would be if subsection (B) did not exist—substantial evidence on the record considered as a whole.

Should it make a difference if the error complained of consists in failing to consider a pertinent issue duly raised by the party asking us to review the administrative agency's decision? Is such an error an error "of law"? We said in *Champion v. Holder*, 626 F.3d 952, 956 (7th Cir. 2010), that the petitioner's "allegation that the BIA

ignored the evidence she presented concerning [her ex-husband's] potential deportation was a good faith claim of legal error that we may review." That's been this court's consistent position, see *Kiorkis v. Holder*, 634 F.3d 924, 928-29 (7th Cir. 2011); *Iglesias v. Mukasey*, 540 F.3d 528, 530-31 (7th Cir. 2008); *Huang v. Mukasey*, 534 F.3d 618, 620 (7th Cir. 2008); *Kucana v. Mukasey*, 533 F.3d 534, 538-39 (7th Cir. 2008), reversed on other grounds under the name *Kucana v. Holder*, 130 S. Ct. 827 (2010). It has support in other circuits as well, see *Alzainati v. Holder*, 568 F.3d 844, 850 (10th Cir. 2009); *Mocevic v. Mukasey*, 529 F.3d 814, 817 (8th Cir. 2008) (per curiam); cf. *Ramadan v. Gonzales*, 479 F.3d 646, 648 (9th Cir. 2007) (per curiam), though others, disagreeing, confine "questions of law" to claimed misinterpretations of statutes or precedents. *Ettienne v. Holder*, 659 F.3d 513, 517 (6th Cir. 2011); *Lutaaya v. Mukasey*, 535 F.3d 63, 69 (1st Cir. 2008); *Arias v. Attorney General*, 482 F.3d 1281, 1284 (11th Cir. 2007) (per curiam); *Jarbough v. Attorney General*, 483 F.3d 184, 189 (3d Cir. 2007).

The petitioner in *Champion* had sought cancellation of removal to Nigeria on the basis of hardship, and a major element of the alleged hardship—the element the Board of Immigration Appeals overlooked—was that her ex-husband, the father of her children, was also facing removal to Nigeria. The removal of both parents would have been an extreme hardship to the children because they were going to remain behind in the United States (or so the Board assumed). The father was a physician and therefore, unless removed, "could conceivably provide continued financial support" and "the two children would likely have the companionship and assistance

of their father and two aunts, all of whom live either with or near them." 626 F.3d at 956. The Board had ignored the fact that the father was in removal proceedings.

The question is not the relative gravity of the oversights in the two cases; it is the scope of our review of such lapses. The key statement in the *Champion* opinion is that "we lack jurisdiction over the BIA's *ultimate* determination that Champion was ineligible for cancellation of removal." *Id*. (emphasis added). Discretion comes into play when the Board has to balance the factors that weigh in favor of removal against those, such as hardship, that weigh against it. And while "the existence of discretion implies a license to make mistakes," since "an exercise of official discretion is reversible by a court only when the official can be said to have abused his discretion, implying conduct not merely mistaken in retrospect but unreasonable," *Brandt v. Board of Education*, 480 F.3d 460, 468 (7th Cir. 2007), this presupposes that discretion was exercised. Failure to exercise discretion is not exercising discretion; it is making a legal mistake. See *Patel v. Holder*, 563 F.3d 565, 568-69 (7th Cir. 2009); *Adebowale v. Mukasey*, 546 F.3d 893, 896 (7th Cir. 2008). Overlooking relevant evidence is not exercising discretion either; if you forget an appointment, you don't explain your forgetfulness by saying that you must have been exercising discretion. Getting the facts backward, as in *Champion*, or simply overlooking a fact pressed on the Board by the applicant for cancellation of removal, is an exercise not of discretion, but of laxity.

The statute could be better drafted—could for example make clear, as indicated perhaps too briefly in the second passage we quoted from *Champion* ("we lack jurisdiction over the BIA's *ultimate* determination that Champion was ineligible for cancellation of removal"), that what the courts can't review is the Board's weighing of the factors pro and con cancellation of removal and other discretionary relief. A statute which said that would not be leaving, as the present statute does, an unexplained gap between weighing pros and cons, which the court can't review, and answering questions of law, which it can. *Champion* closed the gap by assimilating failure to consider material factors to a mistake of law; assuredly such a failure is not a weighing of pros and cons, which is the essence of a discretionary judgment.

The petitioner hasn't convinced us, however, that any argument or evidence was overlooked. The immigration judge was aware of the argument that violence in Mexico would increase the hardship to the petitioner's family in America, especially his parents. She could have been clearer. But she did recite the testimony of the petitioner's father that he believed the petitioner's "removal would present hardships to other family members" and that "the hardships would mean the family members not being able to see the [petitioner] for a number of years." More pointedly the petitioner's sister testified that "neither of the [petitioner's] parents would visit the [petitioner] in Mexico because of the violent situation in that country." The Board in its reference to hardship cited the pages of the immigration judge's opinion that evinced her awareness of the argument.

It is apparent that both the judge and the Board were heavily influenced by the petitioner's formidable history of criminal activities stretching over a period of 15 years, which included not only drug felonies but also gun offenses and a number of serious domestic batteries. They did not think his criminal tendencies offset by the hardship to his family. It would be nitpicking to require the Board to dot every i and cross every t when the direction of its thinking can be inferred with reasonable confidence from the record and from what the Board and the immigration judge did say.

The immigration judge and the Board considered only the hardship to the parents of not being able (because of their fear of violence) to visit their son in Mexico, and not the hardship to the parents should they overcome their fears, visit him, and be attacked by Mexican criminals. The two arguments—hardship because they will not visit him, and hardship because they will visit him and get set upon by criminals—are inconsistent, and only the first was pressed at the administrative level and has support in the administrative record. Moreover, the parents can avoid the second by embracing the first, the lesser hardship of not seeing their son. *That* hardship the administrative agency considered and found wanting, and we cannot reverse its weighing of it against the considerations favoring removal. Any error in failing to mention the greater hardship was therefore harmless.

The petition for review is

Denied.

---