NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued July 11, 2012
Decided August 3, 2012

**Before**

RICHARD A. POSNER, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 12-1033

| | |
|---|---|
| JUAN RAMIREZ-GARAY,<br>*Petitioner,*<br><br>v.<br><br>ERIC H. HOLDER, JR.,<br>Attorney General of the United States,<br>*Respondent.* | Petition for Review of an Order of the<br>Board of Immigration Appeals<br><br>No. A078-847-003 |

## O R D E R

Juan Ramirez-Garay, a 34-year-old Mexican citizen, petitions for review of an order of the Board of Immigration Appeals upholding an immigration judge's denial of his request for cancellation of removal. Ramirez-Garay argues that the Board and the IJ applied an incorrect legal standard for hardship and failed to consider evidence. He also complains that the IJ neglected to warn him of all the conditions of his grant of voluntary departure. Because the former argument challenges the Board's discretionary weighing of the evidence and the latter argument concerns a purely speculative injury, we dismiss the petition.

Ramirez-Garay entered the United States illegally in 1990 and, apart from a two-month trip to Mexico in 1997, has remained in the U.S. ever since. He has four children, all U.S. citizens—one with a former girlfriend and three with his current girlfriend. He remains married to Sylvia Patino, a U.S. citizen, but the couple separated after immigration officials denied the visa petition she filed on his behalf. He came to the attention of immigration authorities upon his arrest in 2008 for illegally transporting alcohol, 625 ILCS § 5/11-502, driving with a suspended license, *id.* § 5/6-303(a), possessing a controlled substance, 720 ILCS § 570/402-C, making an improper right turn, Mun. Code Chi. § 9-16-020A, and using an alley as a through street, Mun. Code Chi. § 9-20-010C. He pleaded guilty to the first two charges, the court dismissed the third, and the state dropped the last two. Two days after his arrest, he received a notice to appear in removal proceedings.

Appearing before the IJ, Ramirez-Garay conceded his removability, but sought the discretionary relief of cancellation of removal or, failing that, voluntary departure. The IJ then scheduled an evidentiary hearing to determine Ramirez-Garay's eligibility for cancellation of removal.

The Immigration and Nationality Act gives the Attorney General discretion to cancel the removal of an immigrant under certain limited conditions. The immigrant must be of good moral character who has resided in the United States for ten years and has not been convicted of an aggravated felony. Significantly in this case, the immigrant must establish that his removal would cause exceptional and extremely unusual hardship to a qualifying U.S.-citizen relative. 8 U.S.C. § 1229b(b)(1). Ramirez-Garay testified that his removal would be an exceptional and extremely unusual hardship to his four U.S.-citizen children, who range in age from a few months to 10 years. His was the sole income in his family's household (he worked as an auto body repairman) because his girlfriend remained at home to breastfeed their infant daughter. He said that the violence from drug crime in his home town of Torreon, Mexico would imperil him and his family, and that the police could not control it. He submitted several articles about the violent drug crime in Mexico. And he apologized for his misdemeanor arrests (for drug possession), which he called mistakes from his "youth." The first such arrest was in 2007 and the last was in 2009, while Ramirez-Garay was awaiting his hearing before the IJ.

But the "most important reason" cited by Ramirez-Garay in seeking cancellation of removal was that two of his sons suffer from cryptorchidism and vesicoureteral reflux, and his removal could prevent them from obtaining medical care. Cryptorchidism is a failure of one or both of the testes to descend. The recommended treatment is surgery: one child had already undergone the operation without apparent complication, and an operation on the younger son was scheduled to take place in September 2010. (The record does not reflect

whether the September surgery took place.) Vesicoureteral reflux is the abnormal flow of urine back to the kidneys, and can lead to urinary tract infections and even kidney damage.

The IJ denied the request for cancellation of removal, concluding that Ramirez-Garay had not demonstrated that his removal would be an exceptional and extremely unusual hardship to his children. Ramirez-Garay had not shown that he would be unable to support his children by working as an auto mechanic in Mexico. The IJ noted that, should the children relocate as well, they already spoke some Spanish. And while acknowledging the danger from violent drug cartels in Torreon and throughout Mexico, the IJ found that Ramirez-Garay was free to relocate to another part of the country.

Concerning the medical conditions of Ramirez-Garay's sons, the IJ found that their conditions did not amount to exceptional and extremely unusual hardship. The IJ accorded "expert weight" to web pages (copies of which he introduced into the record) from WebMD (a popular medical website targeted to lay users) and the website of the Mayo Clinic. According to those sources and Ramirez-Garay's testimony, the boys' conditions, although potentially serious, could be treated with surgery (which the elder son had already received), and Ramirez-Garay had not shown that this surgery would be unavailable in Mexico.

The IJ granted voluntary departure, conditioned upon Ramirez-Garay's posting a $1,000 bond. After setting the bond amount, the IJ did not—as he is required to do by 8 C.F.R. § 1240.26(c)(3)—ask Ramirez-Garay if he wanted to accept voluntary departure or warn him to submit proof of his bond to the Board should he appeal. But the IJ emphatically warned Ramirez-Garay and his attorney about the consequences of failure to comply with the voluntary departure conditions:

> I just want to emphasize that if the respondent doesn't leave within the 60 days, or post bond — the $1,000 bond within one week, or five business days, then he could be arrested and removed from the United States. If that were to happen then he would be barred from returning for ten years and if he returned illegally during that period he could be incarcerated up to two years and barred from adjustment, voluntary departure, and cancellation. Please, explain that to him. I'll give you written instructions on limitations on discretionary relief, which provide that warning in writing. I'll also give you an order, which indicates the conclusions that I've just articulated.

As promised, the IJ gave Ramirez-Garay written notice of the civil penalties for failure to depart, and Ramirez-Garay posted the bond within five business days. But the IJ did not

explicitly provide Ramirez-Garay with an opportunity to decline voluntary departure, nor did he warn Ramirez-Garay that failure to submit proof of the bond with his appeal to the Board would prevent reinstatement of voluntary departure after his appeal.

Ramirez-Garay then appealed the IJ's decision to the Board, which dismissed the appeal. The Board agreed with the IJ that the hardships of the boys' medical conditions and the dangers of rampant violence in Mexico were insufficient to warrant cancellation of removal. The IJ should not have accorded "expert weight" to web pages from WebMD and the Mayo Clinic, the Board ruled, but nonetheless the web pages—which contained definitions of cryptorchidism and vesicoureteral reflux—were consistent with the other evidence and thus the error was harmless. And although the IJ should have given Ramirez-Garay an opportunity to accept or reject voluntary departure, the Board found that the failure to do so was harmless because Ramirez-Garay had posted the bond within five business days as required. The Board also reinstated the grant of voluntary departure. That grant was automatically cancelled, however, when Ramirez-Garay petitioned for judicial review. 8 C.F.R. § 1240.26(i).

In this court, Ramirez-Garay asserts three errors: (1) that the Board and IJ applied an incorrect legal standard, (2) that the Board and IJ ignored evidence of hardship posed by violence in Mexico, and (3) that the IJ's failure to give Ramirez-Gary the opportunity to decline voluntary departure requires remand for a new hearing (with the required warnings) and a new grant of voluntary departure. For the first two contentions—that the Board and IJ applied an incorrect legal standard and ignored evidence—the government urges this court to dismiss for lack of jurisdiction. We lack jurisdiction to review a denial of cancellation of removal, 8 U.S.C. § 1252(a)(2)(B), unless Ramirez-Garay asserts a good faith claim of legal or constitutional error, *id.* § 1252(a)(2)(D). What Ramirez-Garay characterizes as legal errors, the government argues, are really challenges to the Board's weighing of the evidence.

Although he asserts that the Board and IJ committed legal errors, in substance Ramirez-Garay challenges the weight accorded the evidence by the Board and the IJ. *See Khan v. Filip*, 554 F.3d 681, 687–89 (7th Cir. 2009); *Chavez-Vasquez v. Mukasey*, 548 F.3d 1115, 1119 (7th Cir. 2008); *see also Saleheen v. Holder*, 618 F.3d 957, 962 (8th Cir. 2010). First, Ramirez-Garay's contends that the Board and IJ applied what he calls "an incorrect, heightened standard" for hardship because they did not find his case analogous to *In re Recinas*, 23 I&N Dec. 467 (BIA 2002) (en banc). In *Recinas*, the Board found exceptional and extremely unusual hardship in the removal to Mexico of a single mother who, among several problems, lacked any family in Mexico, had no support from the children's father, and had six children—none of whom spoke Spanish. *Id.* at 472. Ramirez-Garay argues that

the Board discounted his own hardship as less substantial than Recinas's, but such weighing of the evidence is reserved to the Board's discretion. *See Khan*, 554 F.3d at 687–89.

Second, Ramirez-Garay contends that the Board and IJ minimized evidence of violent crime in Mexico. Failure to address an entire line of evidence or argument is a legal error that we may review. *See Munoz-Pacheco v. Holder*, 673 F.3d 741, 743–44 (7th Cir. 2012); *Kiorkis v. Holder*, 634 F.3d 924, 928–29 (7th Cir. 2011); *Champion v. Holder*, 626 F.3d 952, 956 (7th Cir. 2010); *Alzainati v. Holder*, 568 F.3d 844, 850 (10th Cir. 2009); *Mocevic v. Mukasey*, 529 F.3d 814, 817 (8th Cir. 2008) (per curiam). But here both the IJ and the Board explicitly addressed the dangers of violent crime in Mexico, as Ramirez-Garay acknowledges. He argues that they gave it short-shrift, but the Board need not belabor its discussion of an immigrant's every argument; it need assure us only that an argument was not overlooked. *See Munoz-Pacheco*, 673 F.3d at 744–45; *Solis-Chavez v. Holder*, 662 F.3d 462, 469 (7th Cir. 2011).

Also, as noted at oral argument, the detrimental country conditions due to the drug violence are common to every illegal immigrant being deported back to Mexico. Because there was no evidence that Ramirez-Garay was involved with or threatened by the perpetrators of the violence, there was no legal error for the Board to consider. Under Ramirez-Garay's standard, everyone ordered deported to Mexico would be eligible to be withheld from removal. Accordingly, we dismiss these claims for lack of jurisdiction.

Ramirez-Garay also argues that the IJ erred by failing to give him the opportunity to accept or decline voluntary departure after being told the amount of the bond and the consequences of failing to post bond within five business days or failing to depart. He seeks a new hearing, at which he would be given all of the required warnings and afforded the option of declining voluntary departure, followed by a new period of voluntary departure (if he accepts it).

Department of Justice regulations require an IJ to give an immigrant the opportunity to opt for removal over voluntary departure after hearing the conditions and the amount of the departure bond. *See* 8 C.F.R. § 1240.26(c)(3). The rule took effect in January 2009, and there is a dearth of case law applying it; we discussed the rule in *Bachynskyy v. Holder*, 668 F.3d 412 (7th Cir. 2011), but found the rule not retroactive and thus inapplicable to Bachynskyy. The rule exists to avoid penalizing immigrants for violating conditions that they find Herculean or for failing to post bonds that they cannot afford. *See Matter of Gamero*, 25 I. & N. Dec. 164 (BIA 2010); Voluntary Departure: Effect of a Motion to Reopen or Reconsider or a Petition for Review, 73 Fed. Reg. 76,927, at 76,933. When immigrants request voluntary departure, they do not know what conditions the IJ will impose or the amount of the departure bond the IJ will set. *ee* § 1240.26(c)(3). To avoid penalizing an

immigrant for failing to meet a condition too arduous, the regulations permit an immigrant to decline voluntary departure (and thus avoid the statutory penalties) *after* hearing the conditions and the bond amount. *See id.*; *Bachynskyy v. Holder*, 668 F.3d at 419; Voluntary Departure, 73 Fed. Reg. at 76,933. But this is an extreme choice, as the only other option is immediate removal. *See* § 1240.26(c)(3); *see also Dada v. Mukasey*, 554 U.S. 1, 21 (2008) (an immigrant who opts out of voluntary departure "becomes subject to the IJ's alternate order of removal").

None of these concerns applies to Ramirez-Garay. He ably met all of the conditions the IJ set, and he does not claim that he would have preferred immediate removal—his lone remaining option had he declined voluntary departure. The IJ imposed only the regulation's minimum conditions, *see* 8 C.F.R. § 1240.26(c)(3), and set the departure bond at $1,000, which Ramirez Garay posted. (He had previously posted a $3,000 appearance bond.) The penalties for failure to depart or post bond—civil fines and a 10-year ban from immigration relief, *see* 8 U.S.C. § 1229c(d)—cannot be imposed upon him now, because his petition for review to this court canceled his grant of voluntary departure. *See* 8 C.F.R. § 1240.26(i); *Pawlowska v. Holder*, 623 F.3d 1138, 1139 n.2 (7th Cir. 2010). Ramirez-Garay asserts—and the government concedes—that the IJ erred by not warning him to provide the Board with evidence of his bond on appeal, else the Board would be unable to reinstate his grant of voluntary departure. *See* § 1240.26(c)(3)(iii). But nonetheless Ramirez-Garay provided proof of his bond to the Board, and so avoided this pitfall even without the required warning. Had he failed to do so, the Board wrote, it would have remanded Ramirez-Garay's case for the IJ to grant a new period of voluntary departure (and to give the required warnings and chance to opt out), and this is consistent with the Board's past practice, *see Gamero*, 25 I&N Dec. at 167–68. But in this case the Board could and did reinstate the grant of voluntary departure itself.

In short, Ramirez-Garay received the benefit of remaining in the United States for the period of his grant of voluntary departure and faces none of the statutory penalties for failure to depart. Remanding his case for a new grant of voluntary departure would serve his purpose of delaying his exit from the United States, but it would not serve the regulation's purpose of preventing immigrants from being punished for failing to meet insurmountable conditions, such as a bond they cannot afford. Because Ramirez-Garay suffered no injury and no future injury is possible, we dismiss this claim as moot. *See Bachynskyy*, 668 F.3d at 421 (dismissing claim because IJ's error, if any, was harmless); *see also generally Wis. Right to Life State Political Action Comm. v. Barland*, 664 F.3d 139, 149 (7th Cir. 2011) (discussing mootness standard).

DISMISSED.