**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued March 3, 2015
Decided March 20, 2015

**Before**

RICHARD A. POSNER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 14-2917

| | |
|---|---|
| MIGUEL MADRID RUANO, <br>     *Petitioner*, | Petition for Review of an Order of the <br> Board of Immigration Appeals. |
| *v.* | No. A078 859 213 |
| ERIC H. HOLDER, JR., <br> Attorney General of the United States, <br>     *Respondent*. | |

**O R D E R**

Miguel Madrid Ruano, a citizen of Mexico, challenges an order of the Board of Immigration Appeals upholding an immigration judge's refusal to grant his application for cancellation of removal. We lack jurisdiction to review a denial of cancellation of removal unless the petitioner presents a legal or constitutional argument. Madrid (the name used by the petitioner) contends that the immigration courts committed legal error by not considering the cumulative impact of his evidence and ignoring some purported evidence entirely. In our view, however, Madrid simply tries to recast as legal error his unhappiness with how his evidence was weighed. We thus dismiss the petition for lack of jurisdiction.

Madrid, who is from a village in the State of Durango, first entered the United States through California in 1991 and, except for two months in 1992, has remained in the United States. During this time he has worked as a truck driver, paid taxes, and married a woman who is also from Durango and illegally present. Together they bought a house and are raising three sons, all born in the United States. Madrid's mother is a U.S. citizen living in Phoenix, Arizona, near a daughter. Four more of his six siblings also are legally in the United States. Another sister lives in Durango, and his father has passed away.

In 2009 the government initiated removal proceedings on the single ground that Madrid has not been admitted or paroled into the United States, *see* 8 U.S.C. § 1182(a)(6)(A)(i). Madrid conceded removability but requested cancellation of removal under 8 U.S.C. § 1229b(b)(1), which requires, among other elements, a showing that removal would cause "exceptional and extremely unusual hardship" to a parent, spouse, or child who is a U.S. citizen or lawful resident.

Madrid testified before the IJ in 2012 that his three sons (then 2, 8, and 13) would suffer from losing a close-knit bond with their father; they spend their free time together as a family, and he has not "been separated from them for even one day." His family relies on him financially, Madrid explained, because their mortgage exceeds the home's value and his wife could not easily find work because she also is undocumented. He testified that his sons would not move with him because he "couldn't give [his] children anything in Mexico." Madrid asserted that he would not be able to find comparable work in Mexico (though he currently is self-employed and owns his truck), that his sons are doing well in school but in Mexico would be forced to work instead of getting an education, and that in Mexico, based on "the news and people who go and don't come back," there is "a lot of violence and crime." This reference to "violence and crime" is the extent of Madrid's testimony on the subject. He added that he does not have family ties or property in Mexico and is unsure whether he would return to Durango.

Madrid's mother was his only other witness. She testified that Madrid sends money when he can and visits twice a year; if Madrid is removed, she said, he would not be able to provide as much financial support and she would not visit him because she is "afraid to go to Mexico because of all the crime." This was her only reference to violence in Mexico.

Madrid did not call any witness to testify about, or offer any documentary evidence concerning, violence in Mexico generally or the State of Durango specifically.

And neither did his lawyer make any argument to the IJ—on paper or at the removal hearing—about crime and violence in Mexico. Rather, at the removal hearing counsel emphasized that Madrid has lived in the United States for over two decades and that his family also lives here. Counsel asked the IJ to consider "the length of years that [he has] been in the United States, the age of his children, and the dramatic impact on the hardship that those children would suffer if he were to return to Mexico."

In his order the IJ concluded that Madrid had not established hardship to his sons or mother "which could be calculated as exceptional or extremely unusual," regardless "whether the hardship factors are considered individually or cumulatively." The IJ disbelieved Madrid's testimony that he would leave his sons behind, since his wife is undocumented, the boys are healthy and speak Spanish, and the family has never been separated. The IJ discounted Madrid's assertion that he would not be able to find work in Mexico (since he admittedly had never tried to find work there) and also thought it likely that Madrid's sons "could adjust to life in Mexico." The IJ further acknowledged that Madrid's mother "does not want her son to be sent to Mexico because of the crime there," but found, "[a]fter considering this testimony and the other evidence," that Madrid's removal would not cause his mother unusual hardship because a daughter lives nearby, Madrid's visits already are limited because of the distance to Chicago, and his financial support is intermittent.

Madrid appealed to the Board, arguing that the IJ had erroneously concluded that he did not meet the hardship element. When "looking at the overall situation," he argued in his brief, "there can be no doubt" that the standard of exceptional and extremely unusual hardship was met. As support, Madrid cited his strong family relationships and role as the financial provider. He added that "the extreme brutality of life in Mexico"—that "gangs and cartels are specifically targeting returning nationals" who are "being kidnapped, held for ransom and tortured"—should not be ignored. "There is no question that this family will be targeted," he asserted, and "this factor alone" warrants cancellation of removal. But Madrid, who by then had changed lawyers and was represented by the same attorney that represents him in this court, did not seek a remand to present new evidence. *See* 8 C.F.R. § 1003.1(d)(3).

The Board acknowledged Madrid's contentions by citing that portion of his brief. The Board explained, however, that it was not persuaded by those contentions after "consideration of the totality of the circumstances, documentary evidence, and testimony."

The government contends that we do not have jurisdiction to review Madrid's petition. As both parties recognize, we cannot review the denial of cancellation of removal unless the petitioner presents a colorable legal or constitutional argument. *See* 8 U.S.C. § 1252(a)(2)(B)(i), (a)(2)(D); *Cruz-Moyaho v. Holder*, 703 F.3d 991, 997 (7th Cir. 2012); *Munoz-Pacheco v. Holder*, 673 F.3d 741, 744 (7th Cir. 2012); *Champion v. Holder*, 626 F.3d 952, 956 (7th Cir. 2010). Madrid insists, though, that our jurisdiction is secure because his contentions—that the evidence of hardship was not considered in the aggregate and his "evidence" of violence in Mexico was entirely ignored—present questions of law. Madrid points out that the Board has held that evidence of hardship must be considered in the aggregate, *In re Monreal-Aguinaga*, 23 I. & N. Dec. 56, 64 (BIA 2001), and that whether or not Board precedent was followed is reviewable by this court as a question of law, *see Adebowale v. Mukasey*, 546 F.3d 893, 896 (7th Cir. 2008); *Jezierski v. Mukasey*, 543 F.3d 886, 888 (7th Cir. 2008).

Madrid's assertion that the cumulative impact of his hardship evidence was not taken into account is frivolous. The IJ cites the Board's precedent requiring him to review the aggregate effect of the evidence and then states that Madrid had not met the hardship requirement "whether the hardship factors are considered individually or cumulatively." The Board likewise explains that it considered the "totality of the circumstances" in upholding the IJ's decision. So Madrid's complaint is really that the immigration courts placed too little weight on the evidence he presented. *See Papazoglou v. Holder*, 725 F.3d 790, 794 (7th Cir. 2013); *Cruz-Moyaho*, 703 F.3d at 997; *Chavez-Vasquez v. Mukasey*, 548 F.3d 1115, 1119 (7th Cir. 2008); *Garcia-Torres v. Holder*, 660 F.3d 333, 338 (8th Cir. 2011); *Mendez-Castro v. Mukasey*, 552 F.3d 975, 980 (9th Cir. 2009). And "the weight assigned by the immigration courts to particular evidence does not present a question of law." *Adebowale*, 546 F.3d at 896.

Much the same can be said concerning Madrid's contention about violence in Mexico. Ignoring a petitioner's evidence might constitute legal error. *See Cruz-Moyaho*, 703 F.3d at 997; *Munoz-Pacheco*, 673 F.3d at 744; *Champion*, 626 F.3d at 956; *Iglesias v. Mukasey*, 540 F.3d 528, 531 (7th Cir. 2008). Here again, though, Madrid really is challenging the weight given his "evidence" of violence and crime in Mexico when he says that evidence was ignored. *See Jawad v. Holder*, 686 F.3d 400, 404 (7th Cir. 2012) (explaining that petitioner was trying "to recast his frustration with the IJ's factual findings" as legal error); *Khan v. Filip*, 554 F.3d 681, 687–89 (7th Cir. 2009) (explaining that "jurisdictional bar cannot be overcome by trying to 'shoehorn' a factual or discretionary determination" into question of law). The IJ considered Madrid's testimony that his children would not move with him to Mexico—because of the

difficult economic conditions, poor educational opportunities, and violence—but was not persuaded by Madrid's assertion of exceptional and extremely unusual hardship. The Board also considered Madrid's contention but was not persuaded that the IJ had erred.

Moreover, Madrid did not present any "evidence" or "argument" that the immigration courts could have overlooked. At the removal hearing he and his mother made offhand comments in the manner of "everyone knows that Mexico is dangerous," but this was not *evidence* requiring a response. Madrid's lawyer did not even mention crime or violence in her written or oral presentations to the IJ. And later before the Board, Madrid's current lawyer asserted that gangs target "returning nationals" and that "there is no question that his family will be targeted." Again, no *evidence* supports these contentions. Madrid has not been to Mexico for over two decades, and his source of information is "the news and people who go and don't come back." Madrid did not suggest any reason that he or his family would be uniquely affected by conditions in Mexico; indeed, he did not specify where in Mexico this violence occurs or that areas where he might live or work are significantly affected. *See Munoz-Pacheco,* 673 F.3d at 743 (considering violence in specific town where petitioner said he would return if removed). Essentially, Madrid advanced only a blanket assertion that no place in Mexico is safe. That is precisely the contention made in *Ramirez-Garay v. Holder*, 490 F. App'x 816 (7th Cir. 2012), and rejected as too insubstantial to avoid the jurisdictional bar:

> [A]s noted at oral argument, the detrimental country conditions due to the drug violence are common to every illegal immigrant being deported back to Mexico. Because there was no evidence that Ramirez-Garay was involved with or threatened by the perpetrators of the violence, there was no legal error for the Board to consider. Under Ramirez-Garay's standard, everyone ordered deported to Mexico would be eligible to be withheld from removal. Accordingly, we dismiss these claims for lack of jurisdiction.

*Id.* at 819; *see also Gramatikov v. INS*, 128 F.3d 619, 620 (7th Cir. 1997) (explaining, in context of withholding of removal, weakness of testimony about conditions of native country when alien had lived in U.S. for years and had no credible basis for testimony).

Even if we were to consider the merits of Madrid's contention, there was no legal error. The immigration courts need only consider those issues presented and say enough for us to conclude "'that it has heard and thought and not merely reacted.'"

*Solis-Chavez v. Holder*, 662 F.3d 462, 469 (7th Cir. 2011) (quoting *Iglesias*, 540 F.3d at 531.) The IJ considered Madrid's reasons for leaving his children in the United States but concluded that they would likely move to Mexico. And the Board demonstrated its awareness by citing the pages of Madrid's brief where he argued that the violence in Mexico warranted discretionary relief. A similar amount of awareness has assured us before that evidence was not overlooked. *See Munoz-Pacheco*, 673 F.3d at 745 (concluding that evidence not ignored where Board cited pages of IJ's opinion evincing awareness).

Accordingly, we DISMISS the petition for lack of jurisdiction.