In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 11-2716 & 12-1056

GAVINO CRUZ-MOYAHO,

*Petitioner*,

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent.*

Petitions for Review of Orders
of the Board of Immigration Appeals.
No. A098 501 241

ARGUED SEPTEMBER 19, 2012—DECIDED DECEMBER 18, 2012

Before BAUER, KANNE, and WOOD, *Circuit Judges*.

BAUER, *Circuit Judge*. Gavino Cruz-Moyaho has been fighting his removal from the United States since 2005. He claims that his removal would lead to "exceptional and extremely unusual hardship" to his three United States-citizen children so his removal should be cancelled under 8 U.S.C. § 1229b(b). The immigration judge (IJ) denied Cruz-Moyaho's application for cancellation

in October 2009, and the Board of Immigration Appeals (the BIA or the Board) affirmed the denial in August 2010. Now pending before us are two petitions for review resulting from a series of denied motions challenging subsequent decisions of the Board. We find that we lack jurisdiction over the majority of Cruz-Moyaho's claims. But for those claims we may consider, we find that the Board did not err in denying any of Cruz-Moyaho's motions and, therefore, deny the two petitions for review.

## I. BACKGROUND

Cruz-Moyaho is a Mexican citizen who first entered the United States in June 1995. He did so "without inspection" and, therefore, was in the country illegally and was eligible for removal. *See Marin-Garcia v. Holder*, 647 F.3d 666, 668 (7th Cir. 2011). Since then, Cruz-Moyaho has lived in the United States, notwithstanding the fact he may have traveled to and from Mexico on various occasions. And during this time, he has worked as a roofer, paid his taxes, and, together with his wife, raised three children—each of whom was born in the United States.

On October 28, 2005, the Department of Homeland Security (DHS) instituted removal proceedings against Cruz-Moyaho. DHS charged Cruz-Moyaho with being an alien in the United States without being admitted or paroled, subject to deportation pursuant to Section 212(a)(6)(A)(i) of the Immigration and Nationality Act (INA).

On July 6, 2006, Cruz-Moyaho admitted his unlawful status and conceded that he had no lawful right to remain in the United States. Instead, he filed an application for cancellation of removal under 8 U.S.C. § 1229b(b). This provision allows the U.S. Attorney General to cancel removal of an alien if the alien satisfies the following criteria: (1) he has been continuously present in the United States for ten years prior to seeking this relief; (2) he displays good moral character; (3) he has not been convicted of certain, specified offenses; and (4) his removal would result in "exceptional and extremely unusual hardship" to a qualifying relative, including his spouse, parent, or child. *See Barma v. Holder*, 640 F.3d 749, 751 (7th Cir. 2011) (quoting 8 U.S.C. § 1229b(b)(1)). "Exceptional and extremely unusual hardship" has not been statutorily defined, but the Board has held that the standard requires the alien to prove "his qualifying relatives would suffer hardship that is substantially different from, or beyond, that which would be normally expected from the deportation of an alien with close family members [in the United States]." *In re Monreal*, 23 I. & N. Dec. 56, 65 (BIA 2001).

On October 27, 2009, the IJ, Craig M. Zerbe, issued an oral decision denying Cruz-Moyaho's application for relief. The IJ concluded that Cruz-Moyaho satisfied the first three elements but did not demonstrate that his three children would suffer exceptional and extremely unusual hardship. Cruz-Moyaho timely appealed to the Board, contending that the IJ failed to consider "the cumulative effect of the hardships" faced by his children. On August 12, 2010, the Board affirmed the IJ's decision.

Cruz-Moyaho challenged the Board's decision in a number of ways; the Government opposed all of them. He first petitioned us for review of the Board's decision, which was filed on September 7, 2010 (No. 10-3084).

With his petition still pending, Cruz-Moyaho filed a Motion to Reconsider (Reconsider #1) with the Board on September 10, 2010; he included new information that discussed the increased violence in Mexico. This motion was followed by a Motion to Reopen (Reopen #1), which was filed on November 12, 2010. Reopen #1 cited two unpublished Board decisions: *In re Frausto-Jaramillo*, A097 330 776 (BIA 2010), in which the Board reopened proceedings of another Mexican citizen who had also unsuccessfully applied for cancellation of removal; and *In re Salgado-Salgado*, A037 726 749 (BIA 2009), in which the Board reopened the proceedings for an application under INA § 212(c), *see* 8 U.S.C. § 1182(c) (repealed 1996). Reopen #1 also discussed the additional Mexican-violence information included in Reconsider #1.

On January 12, 2010, Cruz-Moyaho withdrew the petition for No. 10-3084 pursuant to Federal Rule of Appellate Procedure 42(b), and the case was dismissed.

The Board denied Reconsider #1 and Reopen #1 in a joint order issued on June 29, 2011. Because Reconsider #1 contained new information about violence along the Mexican border, the Board considered the new information in conjunction with Reopen #1. (A motion to reconsider is focused on errors of law; new facts and information should be introduced in a motion to reopen. *See Ortega v. Holder*, 592 F.3d 738, 746 n.1 (7th Cir. 2010).)

Nonetheless, the Board denied Reconsider #1 because Cruz-Moyaho failed to convince the Board that its decision on August 12, 2010, contained a procedural or substantive error. As it relates to Reopen #1, the Board denied this motion as well because the new evidence, "at most, [showed] a generalized risk of harm" that was not unusual to Cruz-Moyaho's children. On July 27, 2011, Cruz-Moyaho petitioned for review of these decisions (No. 11-2716).

Continuing with his challenge, Cruz-Moyaho filed another motion with the Board on July 29, 2011. Cruz-Moyaho was prohibited from asking for reconsideration of Reconsider #1, *see* 8 C.F.R. § 1003.2(b)(2), so he asked the Board to reconsider its decision for Reopen #1 (Reconsider #2). He also asked the Board to use its discretion to reopen *sua sponte*, and included a message dated July 15, 2011, from the U.S. Department of State that discussed the increased violence in Ciudad Juárez, Mexico, resulting from recent drug-enforcement activity. Also attached to the motion was a Chicago Tribune article by Patricia Giovine with the headline "More Mexicans seeking U.S. asylum" and a TIME magazine article discussing the drug violence in Mexico. *See* Tim Padgett, *Day of the Dead*, TIME, July 11, 2011, at 26. (The additional information equated to a second Motion to Reopen (Reopen #2).)

On December 22, 2011, the Board issued an order denying Reconsider #2 and Reopen #2. In the order, the Board said Cruz-Moyaho was not denied due process during his removal proceedings and he did not identify any

material factual or legal errors in the Board's order of June 29, 2011. Insofar as Cruz-Moyaho's motion from July 29, 2011, contained new information, the Board denied Reopen #2 as untimely and number-barred. *See* 8 C.F.R. § 1003.2(c)(2). The Board also concluded that Cruz-Moyaho's situation was not "an exceptional situation" that warranted its *sua sponte* discretion. On January 9, 2012, Cruz-Moyaho filed a petition for review of the Board's order from December 22, 2011 (No. 12-1056).

We consolidated Nos. 11-2716 and 12-1056, and we shall now dispose of them.

## II.  DISCUSSION

Our review begins with the question of jurisdiction. Cruz-Moyaho's brief reads as if we were reviewing the original denial of his cancellation of removal and had the ability to review the IJ and the Board's fact-finding *de novo*; 8 U.S.C. § 1252(a) prohibits courts from reviewing judgments regarding the granting of relief under § 1229b. Accordingly, we lack jurisdiction to review any claim in any of the motions or petitions that the IJ or the Board incorrectly held that Cruz-Moyaho's children would not experience exceptional and extremely unusual hardship if Cruz-Moyaho was deported. *See Delgado v. Holder*, 674 F.3d 759, 765 (7th Cir. 2012). We have also held that "where we lack jurisdiction to review an underlying order, we also lack jurisdiction over appeals from denials of motions to reopen and reconsider those orders." *Bachynskyy v. Holder*, 668 F.3d 412, 416 (7th Cir. 2011).

Applying these rules, we conclude that we lack jurisdiction over the majority of Cruz-Moyaho's arguments that simply challenge the merits of the Board's orders. This includes his contentions that the Board "erred as a matter of law" by reaching decisions contrary to his position because they are merely factual disagreements disguised as legal contentions. *See Vasile v. Gonzales*, 417 F.3d 766, 768 (7th Cir. 2005) (stating that a petitioner cannot "shoehorn" a claim into a "question of law"). This also includes any contention that the Board failed to conduct a thorough review of the record, or as Cruz-Moyaho puts it, failed to "[t]ak[e] all the relevant factors in the aggregate." *See Mireles v. Gonzales*, 433 F.3d 965, 968 (7th Cir. 2006).

To the extent Cruz-Moyaho sets forth colorable arguments related to legal errors and constitutional claims arising out of the Board's orders from June 29, 2011, and December 22, 2011, we retain jurisdiction and will review them in turn. *See* 8 U.S.C. § 1252(a)(2)(D); *Ward v. Holder*, 632 F.3d 395, 397 (7th Cir. 2011). (Cruz-Moyaho withdrew No. 10-3084, so any arguments arising directly out of the IJ's October 27, 2009 oral decision or the Board's August 12, 2010 order are not properly before us and are rejected accordingly.)

## A.  Legal Errors—Failure to Consider Evidence

Arguments focused on legal errors are reviewed *de novo*, "with deference to the agency if the issue involves an ambiguous section of the INA or an interpretation of agency regulations." *Kiorkis v. Holder*, 634 F.3d 924, 928

(7th Cir. 2011). "Legal questions include 'challenges to the BIA's interpretation of a statute, regulation, or constitutional provision, claims that the BIA misread its own precedent or applied the wrong legal standard, or claims that the BIA failed to exercise discretion at all.'" *Ward*, 632 F.3d at 397 (quoting *Patel v. Holder*, 563 F.3d 565, 568 (7th Cir. 2009)). "[A] claim that the BIA has completely ignored the evidence put forth by a petitioner is [also] an allegation of legal error." *Iglesias v. Mukasey*, 540 F.3d 528, 531 (7th Cir. 2008).

The basis for Cruz-Moyaho's legal claims is that the Board failed to consider evidence in its orders from June 29, 2011, and December 22, 2011. We address each of Cruz-Moyaho's claims as they relate to the Board's particular orders.

### 1.   Order from June 29, 2011

Cruz-Moyaho's only colorable legal claims with respect to the order of June 29, 2011, are that the Board failed to consider (or include in the order) certain pieces of evidence, mainly: (1) his contention that he cannot immigrate to the United States until his oldest child turns twenty-one in March 2024; (2) the increasing violence in Mexico; (3) the lower standard of living in Mexico; (4) the poverty his children will suffer in Mexico; and (5) the educational limitations in Mexico. But colorable does not mean meritorious, and these claims all fail.

Initially, the fact Cruz-Moyaho cannot immigrate to the U.S. until March 2024 first appears in Cruz-Moyaho's

brief. If the Board never had the information to consider, Cruz-Moyaho cannot be surprised that it was not included in the adjudication of his case. The burden was on Cruz-Moyaho to establish extreme and exceptionally unusual hardship; his failure to provide relevant evidence to the Board cannot be the basis for a legal challenge. *See* 8 U.S.C. § 1252(b)(4)(A) (stating that "the court of appeals shall decide the petition only on the administrative record on which the order of removal is based").

Next, when reaching a decision, the Board must "consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Kebe v. Gonzales*, 473 F.3d 855, 857 (7th Cir. 2007) (internal quotation marks omitted). We are convinced the Board did that in its order of June 29, 2011; Cruz-Moyaho's challenges related to the remaining pieces of evidence are equally without merit.

A petitioner has a high mountain to climb when arguing that a motion to reconsider or to reopen should be granted. *See Ahmed v. Ashcroft*, 388 F.3d 247, 249 (7th Cir. 2004) ("To be within a mile of being granted, a motion for reconsideration has to give the tribunal to which it is addressed a reason for changing its mind."). It thus makes sense that the Board can deny a motion—to reconsider or to reopen—without discussing the merits in detail if all it does is "rehash a previous argument." *See Joshi v. Ashcroft*, 389 F.3d 732, 735 (7th Cir. 2004).

When discussing Reconsider #1 in the order of June 29, 2011, the Board did not discuss each piece of evidence

Cruz-Moyaho ever provided because Cruz-Moyaho failed to "identify any overlooked errors of fact or law" in the Board's order of August 12, 2010. A review of the record confirms this finding. Additionally, the Board provided a full explanation of its reasons for denying Cruz-Moyaho's original appeal in its order of August 12, 2010, *see Cruz-Moyaho*, A098 501 241 (BIA 2010), so it was not required to provide the same explanation a second time (in the order of June 29, 2012). *Cf. Ahmed*, 388 F.3d at 248-49 (stating that the Board should have provided further explanation of its reasons for denying the motion to reconsider because the Board did not issue an opinion when it originally affirmed the IJ's decision). We find no errors in the Board's denial of Reconsider #1.

Looking to Reopen #1, Cruz-Moyaho provided additional comments to support his claim that the violence and unrest in Mexico has increased. One article submitted, Andi McDaniel, *The Juan Doe Problem: One Woman's Search for Dead Migrants' Roots*, MOTHER JONES, Sept./Oct. 2010, at 64, discusses the current problem of identifying and burying the roughly 700 dead bodies of migrants found along the U.S./Mexico border every year. A book provided, GEORGE W. GRAYSON, MEXICO: NARCO-VIOLENCE AND A FAILED STATE? 1-6 (3rd prtg. 2010), explains the ongoing "war on drugs" in Mexico, which it says, has led to powerful drug traffickers infiltrating Mexico's political and law enforcement organizations, violent turf wars among cartels, and an overall increase in murders and kidnappings. In short, we are cognizant of the information Cruz-Moyaho submitted as

well as the current conditions in Mexico, *see Cruz-Mayaho v. Holder*, Nos. 10-1634, 11-2914, 11-3512, 2012 U.S. App. LEXIS 21561, at *10 (7th Cir. Oct. 17, 2012), but Cruz-Moyaho's only legal challenge is to whether the Board considered the discussions at all.

The Board laid out its reasons for denying Reopen #1 in the order of June 29, 2011. The Board acknowledged Cruz-Moyaho's new information and stated exactly why it was not persuaded to reopen the case:

> [Cruz-Moyaho] has not provided evidence showing an unusual risk to his children inherent in his home-town of Puebla, where he stated he will return if his family accompanies him to Mexico. When considered cumulatively with the hardship evidence previously in the record, we are not persuaded that these articles are likely to change the result in this case. (citations omitted).

We believe the Board sufficiently considered the newly-provided information about the violence in Mexico and acted appropriately when it denied Reopen #1.

The rest of Cruz-Moyaho's challenges to the June 29, 2011 order have been considered and are rejected for lack of jurisdiction.

### 2.   Order from December 22, 2011

Turning our attention to the December 22, 2011 order, Cruz-Moyaho's arguments again fail to gain traction. As a preliminary matter, Cruz-Moyaho's challenge to

Reconsider #2 is the same as his challenge to Reconsider #1 and Reopen #1: the Board did not consider evidence. When explaining why its denial of Reconsider #2 was appropriate, the Board stated,

> Although [Cruz-Moyaho] disagrees, the excessive crime in Mexico does not amount to the exceptional and extremely unusual hardship as contemplated under the law. The motion cites to no binding law regarding the hardship standard that would warrant reconsideration. The facts are essentially not in dispute; just the results drawn from them. The respondent has not established errors of fact or law that would warrant reconsideration of our prior order denying the motion to reopen. (internal citations omitted).

Again, we believe the Board adequately considered the evidence previously provided regarding the violence in Mexico and find no errors in its decision to deny Reconsider #2.

That brings us to the Board's denial of Reopen #2. Cruz-Moyaho contends the Board erred as a matter of law when it concluded Reopen #2 was untimely and number-barred and, as a result, it was prohibited from considering the newly-submitted evidence in Reopen #2. This claim is not a legal claim, however. Cruz-Moyaho does not argue that the Board applied the incorrect statute or misinterpreted the relevant provision. Rather, he is challenging the Board's *conclusion* that the information provided did not meet the standard for "materially changed circumstances" in 8 C.F.R.

§ 1003.2(c)(3)(ii) to warrant a departure from the limitations on motions to reopen. Because we lack jurisdiction to review this determination and can glean no legal challenges to Reopen #2, we find no errors in the Board's decision.

Lastly, in accordance with our recent decision in *Anaya-Aguilar v. Holder*, No. 11-3052, 2012 U.S. App. LEXIS 21120, at *1-2 (7th Cir. Oct. 4, 2012), we conclude that we do not have jurisdiction to review Cruz-Moyaho's claims regarding the Board's failure to exercise its *sua sponte* authority. *See id.* (explaining that our jurisdiction is limited to *plausible* constitutional or legal challenges to the Board's exercise of its *sua sponte* authority).

### B.  Constitutional Claims

In search of an outcome more favorable than those of his challenges to the Board's consideration of the evidence, Cruz-Moyaho claims that his and his children's due process and equal protection rights were violated in one or more of the Board's rulings. But the fate of these claims is no different, and we can make short work of any due process argument: neither Cruz-Moyaho nor his children had a protected liberty interest in the discretionary relief of a motion to reconsider or a motion to reopen. *See, e.g., Moosa v. Holder*, 644 F.3d 380, 385 (7th Cir. 2011).

We proceed to the equal protection arguments, beginning with those related to Cruz-Moyaho himself. Cruz-Moyaho's equal protection challenge relies on the

cases of Jesus Salgado-Salgado and Carlos Frausto-Jaramillo, two other Mexican aliens who had their cases reopened by the Board. *See In re Frausto-Jaramillo*, A097 330 776 (BIA 2010); *In re Salgado-Salgado*, A037 726 749 (BIA 2009). The arguments here are exactly the same as those put forth in his brother Roberto's case, *Cruz-Mayaho*, 2012 U.S. App. LEXIS 21561, at *10-11, 14: Salgado-Salgado and Frausto-Jaramillo's cases were seemingly decided on the basis of increased violence in Mexico, so Cruz-Moyaho's case should likewise be reopened on that basis. The only difference here is Cruz-Moyaho raised the Frausto-Jaramillo argument below. *Cf. id.* at 14-15. That difference is inconsequential, however; we were clear in *Cruz-Mayaho* why the comparisons failed on the merits:

> In essence, Cruz-Mayaho is raising a "class-of-one" argument. But no matter whether one takes the view of this court's lead opinion in *Del Marcelle v. Brown County Corp.*, 680 F.3d 887 (7th Cir. 2012) (opinion of Posner, J.), or the dissent registered by a plurality of the court, *id.* at 905 (opinion of Wood, J.), Cruz-Mayaho cannot prevail. There is neither evidence of any improper motive directed personally against Cruz-Mayaho on the Board's part, nor does its decision lack a rational basis. Salgado-Salgado's case came up in a different procedural posture—he was seeking a waiver of inadmissibility for adjustment of status, and Frausto-Jaramillo's petition was unopposed [by the Government].

*Id.* at 14.

Cruz-Moyaho's arguments are the same as his brother's, and not surprisingly, they fail for the same reasons. Cruz-Moyaho's equal protection rights were not violated.

The last issue involves the equal protection rights of Cruz-Moyaho's children. Cruz-Moyaho contends his children's equal protection rights were violated for the same reasons his rights were violated. The Government argues that Cruz-Moyaho's attempt to assert his children's equal protection rights should be disregarded because the argument was not raised below. *See United States v. Fluker*, 698 F.3d 988, Nos. 11-1013, 11-3008 & 11-3082, 2012 U.S. App. LEXIS 22219, at *36 (7th Cir. Oct. 26, 2012) (stating that we will only consider arguments not properly raised below under "exceptional circumstances"); *Long-Gang Lin v. Holder*, 630 F.3d 536, 542 n.2 (7th Cir. 2010) ("The failure to exhaust may be excused when an alien raises a constitutional claim that the Board 'would [have been] powerless to address,' but such failure is not excused when the claim is 'based on procedural failings that the [Board]' could have remedied." (quoting *Pjetri v. Gonzales*, 468 F.3d 478, 481 (7th Cir. 2006))). We agree with the Government. There are no exceptional circumstances in this case, and the argument's principal focus is on a procedural deficiency—i.e., the Board's failure to reopen Cruz-Moyaho's case—that the Board could have cured by simply reopening Cruz-Moyaho's case. Cruz-Moyaho is not excused from failing to raise the argument before the Board, and the argument is deemed waived.

### III. CONCLUSION

For the foregoing reasons, we DENY the petitions for review before us in Nos. 11-2716 and 12-1056.