**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4418
_____

MICHEL MAKENSON,
                                             Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                             Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A071-497-380)
Immigration Judge:  Honorable Andrew R. Arthur
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 9, 2014
Before: FUENTES, COWEN and VAN ANTWERPEN, Circuit Judges

(Opinion filed: July 10, 2014)
_____

OPINION
_____

PER CURIAM

Petitioner Michel Mackenson[1] seeks review of a final order of removal issued by

the Board of Immigration Appeals ("BIA").  The Government has moved to dismiss the

_____

[1] Petitioner's name is frequently misspelled "Makenson" in the record, as it is in the
above caption.

petition for lack of jurisdiction. We will grant in part and deny in part the motion to dismiss. To the extent we have jurisdiction, we will deny the petition for review.

Mackenson, a native and citizen of Haiti, fled his homeland in 1991, after a coup ousted Haitian president Jean Bertrand Aristede; he was picked up by the U.S. Coast Guard and, after a year in Guantanamo Bay, was brought to the United States. Over the next decade and a half, he was convicted of numerous criminal offenses including, inter alia, conspiracy to distribute cocaine, receiving stolen property, and aggravated assault. A notice to appear for removal proceedings was issued by the Immigration and Naturalization Service in 2008, charging him with removability as an alien not in possession of a valid immigrant visa or other entry document. Mackenson conceded removability. In 2013, as a result of his convictions, additional charges of inadmissibility/deportability were filed in the matter. Again, Mackenson admitted the factual allegations and conceded removability, but he subsequently applied for asylum and withholding of removal under the Immigration and Naturalization Act ("the Act"), and for relief under the Convention Against Torture Act ("CAT"). He maintained that he fears harm because of his former political associations in Haiti, as well as those of his father,[2] and that he fears harm from the Haitian government as a criminal deportee.

At his hearing before the Immigration Judge ("IJ"), Mackenson testified that, on the day of the coup, his mother and sister were killed when their home was fire-bombed, and that he believed his father was killed at a government building house. The IJ determined that Mackenson was not credible, particularly in light of the numerous

---

[2] Mackenson alleged that his father was a former official in Haiti.

discrepancies between his testimony and his prior statements to immigration officials (including his asylum application) regarding the circumstances surrounding the deaths of his parents and sister. Finding there was no sufficient basis for asylum or withholding under the Act, or for relief under the CAT, the IJ ordered Mackenson removed to Haiti. The BIA affirmed, and a final order of removal was issued on October 31, 2013. Mackenson timely petitioned for review.

In its motion to dismiss, the Government argues that this Court lacks jurisdiction to consider Mackenson's petition because he was convicted of a crime of moral turpitude and a crime relating to a controlled substance. See 8 U.S.C. §§ 1182(a)(2)(C), 1252(a)(2)(C). It acknowledges, however, that this Court may entertain constitutional challenges and questions of law. See 8 U.S.C. § 1252(a)(2)(D). While some of Mackenson's claims fail to raise "colorable violations" of the Constitution, see Jarbough v. Att'y Gen., 483 F.3d 184, 189 (3d Cir. 2007), his petition does present questions of law which we have jurisdiction to review. Accordingly, the motion to dismiss is denied in part.

Mackenson argues on appeal that both the IJ and BIA failed to consider evidence corroborating his claim. See Green v. Att'y Gen., 694 F.3d 503, 508 (3d Cir. 2012) (suggesting that, in the context of a CAT claim, the failure to consider relevant evidence is legal error); see also 8 C.F.R. § 1208.16(c)(3). We review such claims de novo. See Cruz-Moyaho v. Holder, 703 F.3d 991, 997 (7th Cir. 2012). In pressing his claim, he points to the IJ's statement that Mackenson had "offered no extrinsic evident (sic) to support any of his claims." It is clear from the opinion that this statement was referring

3

to Mackenson's failure to present corroborating evidence of either his or his father's political affiliations. Indeed, the IJ specifically noted that "[t]he record does not contain any statements from anyone who knew the respondent while he was in Haiti. The record does not contain any extrinsic or contemporaneous documents talking about his father's involvement in the Tonton Macoutes or as a senator from Cap-Haitien or in any way with the Aristide government, nor does the record contain any evidence about the respondent's activities with FNCD or La Famille C'est La Vie." App., Vol. II at 12-13. Moreover, the IJ explicitly discussed other evidence he considered, including, contrary to Makenson's contention, the country conditions report.

Mackenson argues that the IJ neglected to consider his timing in leaving Haiti right after the coup as circumstantial evidence of his political affiliations, as well as his expert witness's testimony on this issue. Specifically, he points to the portion of the expert's testimony where she addresses this issue: "People started fleeing right after the coup because it was a violent and bloody coup, and there were hundreds of people that were killed immediately, so people did flee at that, at that time. And so when you see that somebody left at that period, you make the assumption that they had to flee because they were supporting the Lavalas movement and President Aristide." App., Vol. III at 234. The IJ discussed the expert's testimony in his opinion; the mere fact that he did not discuss *this* portion does not indicate it was not considered. See Huang v. Att'y Gen., 620 F.3d 372, 388 (3d Cir. 2010) (the IJ and BIA need not "discuss every piece of evidence" presented by an applicant). It is more likely it was not discussed because this general assumption is insufficient to support Mackenson's claim, particularly in light of

4

the negative credibility finding, absent any specific evidence such as the type the IJ explicitly noted was lacking.

Mackenson next maintains that the IJ failed to identify which facts needed corroboration, in contravention of this Court's decision in Abdulai v. Ashcroft, 239 F.3d 542, 553-55 (3d Cir. 2001) (acknowledging that the BIA may require corroboration of otherwise-credible testimony, but must identify which aspects need to be corroborated). This Court may review such an alleged misapplication of the law. See generally Singh v. Gonzales, 432 F.3d 533, 541 (3d Cir. 2006). Contrary to Mackenson's claim, however, the IJ's 22-page (oral) decision made it abundantly clear which aspects of Mackenson's testimony lacked credibility, and were, therefore, in need of corroboration.

We lack jurisdiction to review Mackenson's claim that the IJ's negative credibility finding, which is a factual determination, see Jishiashvili v. Att'y Gen., 402 F.3d 386, 392 (3d Cir. 2005), is unsupported by substantial evidence. See Green, 694 F.3d at 507. Moreover, even if jurisdiction did lie, there is ample evidence to support the IJ's credibility determination. The record is replete with Mackenson's inconsistent versions of his family's political affiliations and the events on the day of the coup, which allegedly took his family members' lives. As the IJ noted, "The events of September 30, 1991, were the most crucial events in the respondent's life, if respondent is to be believed. . . . It strains the Court's credulity to conclude that the respondent would not remember the events of that day . . ." App., Vol. II at 62-63.

Mackenson also claims that the IJ impermissibly considered his decision not to take voluntary departure as a negative factor in denying his CAT claim. Because the

5

essence of this claim is that he was penalized for exercising his right to due process, it is subject to review. See 8 U.S.C. § 1252(a)(2)(D). The IJ noted, in *dicta* ("As a side note . . ."), that the expert's testimony regarding potential harm to criminal deportees related only to those handed over by the government. He went on to state that he was "not aware of any case that indicates that an alien facing removal must take steps to avoid torture if returned to a country of removal, however, the Court notes that it is possible that this may have some bearing, again, on the respondent's eligibility/ineligibility for torture relief." The IJ nevertheless explicitly stated that he was not making such a finding in this case. Accordingly, the BIA did not err in denying this claim.

Finally, we have jurisdiction to review Mackenson's assertion that the IJ applied the wrong legal standard with respect to his CAT claim. See Pareja v. Att'y Gen., 615 F.3d 180, 188 (3d Cir. 2010). Mackenson testified that he suffers from a leg injury.[3] He argued that he would be subject to torture by authorities who will fail to provide adequate medical care in Haiti's detention facilities, and by other inmates who will seek retribution because of Mackenson's (and his father's) political affiliations. In denying the claim, the IJ relied on this Court's decision in Pierre v. Att'y Gen., 528 F.3d 180 (3d Cir. 2008) (en banc), noting the absence of evidence of specific attempts by government officials to deprive Mackenson of better care in order to torture him. Mackenson argues the IJ should have looked to the intent of the individuals actually inflicting the torture, not simply the intent of the government officials detaining the deportee, as required by Roye

---

[3] Mackenson had surgery in 2011 for a torn ACL. He testified that he still has some torn ligaments in his knee.

v. Att'y Gen., 693 F.3d 333, 342 (3d Cir. 2012). Unlike the petitioner in Roye, however, Mackenson wholly failed to present evidence to support his claim of torture; because he failed to credibly establish his political associations, he could not demonstrate an intent to torture him because of them. The IJ, therefore, did not err in failing to apply the framework of Roye to his claims.

Based on the foregoing, we will grant the Government's motion to dismiss in part. To the extent we have jurisdiction, we will deny the petition for review.