In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 17-3198 & 18-1104

FRANCISCO LOPEZ GAMERO,

*Petitioner*,

*v.*

WILLIAM P. BARR,
Attorney General of the United States,

*Respondent*.

Petitions for Review of Orders of the
Board of Immigration Appeals.
No. A090-289-114

ARGUED MAY 16, 2018 — DECIDED JULY 3, 2019

Before FLAUM, SYKES, and HAMILTON, *Circuit Judges*.

SYKES, *Circuit Judge*. Francisco Lopez Gamero, a Mexican citizen and lawful permanent resident of the United States, faces removal because of two state drug convictions. An immigration judge found him removable as an alien convicted of the aggravated felony of "illicit trafficking in a controlled substance." 8 U.S.C. § 1101(a)(43)(B). He sought deferral of removal under the Convention Against Torture,

but the judge denied that relief because the evidence he presented about the risk of torture from Mexican drug cartels was largely speculative. The Board of Immigration Appeals affirmed.

Lopez Gamero later moved to reopen the removal proceedings based on new evidence—most notably, evidence that his brother-in-law and nephew had been kidnapped and held for ransom in Lopez Gamero's hometown. The Board denied the motion, ruling that the new evidence was unlikely to change the outcome.

Lopez Gamero seeks review of both decisions. He raises three arguments: (1) his drug convictions do not qualify as "illicit trafficking" under § 1101(a)(43)(B) because the crimes in question do not require proof of remuneration; (2) the agency's decision to deny his application under the Convention Against Torture is not supported by substantial evidence; and (3) the agency applied the wrong legal standard and abused its discretion when it denied his motion to reopen. We deny the petitions for review.

## I. Background

Lopez Gamero entered the United States in 1973 and became a lawful permanent resident in 1989. Over the next decade and a half, he was convicted of three crimes in Cook County Circuit Court: (1) a domestic-violence offense in 1997, *see* 720 ILL. COMP. STAT. 5/12-3.2(a)(1); (2) possession of cocaine with intent to deliver in 2005, *id.* § 570/401(c)(2); and (3) possession of cannabis with intent to deliver, *id.* § 550/5(f), also in 2005.

On April 6, 2016, the Department of Homeland Security initiated removal proceedings against Lopez Gamero. An

immigration judge found him removable as an alien convicted of illicit trafficking in a controlled substance, an aggravated felony listed in § 1101(a)(43)(B). The judge also determined that Lopez Gamero is ineligible for most forms of relief from removal—specifically, asylum, cancellation of removal, and withholding of removal. That left only one potentially viable path to relief: deferral of removal under the Convention Against Torture. The judge held a merits hearing on that claim.

Lopez Gamero testified that he fears torture at the hands of drug cartels if he is removed to Mexico. He bases this fear on a series of incidents that occurred in his hometown of General Carlos Real, Durango, Mexico. In October 2008 his cousin alerted him that suspicious men "were looking for him." He later heard warnings from acquaintances and family members that unknown individuals had been asking about him and surveilling his house in General Carlos Real. In 2009 Lopez Gamero's father told him that he was approached by suspicious men in a pick-up truck asking about Lopez Gamero's whereabouts. In 2011 Lopez Gamero's wife and daughter received an anonymous phone call, and the caller knew they were planning to travel to Mexico. In September 2012 Lopez Gamero's housekeeper at the home in Mexico told him that "several people … dressed up like military" came to the house and forced their way in. Finally, in October 2013 Lopez Gamero's wife and daughter were staying at a friend's house in Mexico when the house was "shot at."

Lopez Gamero offered several reasons why cartel members might be looking for him. He thought they might be interested in him because of his connections to the United

States and his controlled-substance convictions. He also said he might be a target because cartel members viewed him as wealthy given his home ownership.

Lopez Gamero's wife and daughter testified about their experiences with the unknown caller and the shooting. Lopez Gamero also submitted certified statements from other residents of General Carlos Real generally asserting that his safety was at risk if he returned.

Dr. Nathan Jones, an expert witness on Mexican drug-cartel violence, testified about how the cartels operate, the pervasive cartel violence in General Carlos Real, and the risks that Lopez Gamero would face in other parts of the country. He testified that Lopez Gamero would face a high risk of harm if he returned to General Carlos Real, a moderate risk if he lived elsewhere but maintained contact with relatives, and a low but still significant risk if he lived elsewhere and severed communication with his family.

The immigration judge was not persuaded. He found Lopez Gamero credible but gave his testimony "little weight" because he had difficulty remembering dates and much of his information was secondhand or speculative. He reached the same conclusion for Lopez Gamero's wife and daughter. The judge also declined to credit Dr. Jones's opinion testimony, reasoning that it was "not supported by facts in the record and was highly speculative." The judge accordingly declined to order deferral of removal, explaining that the evidence was insufficient to establish that Lopez Gamero faced a substantial risk of torture if removed to Mexico.

Lopez Gamero appealed to the Board of Immigration Appeals, challenging the denial of deferral of removal and

also the judge's predicate legal conclusion that his drug convictions qualify as illicit trafficking under § 1101(a)(43)(B). On the latter issue, he argued that "illicit trafficking" offenses are limited to those that involve commercial transactions in drugs—i.e., exchanging drugs for remuneration.

The Board upheld the immigration judge's decision. The Board first held that any felony punishable under the Controlled Substances Act (or a corresponding state drug felony) qualifies as illicit trafficking under § 1101(a)(43)(B) regardless of whether it involves remuneration. The Board also concluded that Lopez Gamero had not met his burden of proof for deferral of removal, agreeing with the immigration judge's observation that his "entire case is speculative and lacking objective support."

Lopez Gamero moved to reconsider and reopen the proceedings. He argued that the Board ignored material evidence in the record, but he also submitted new evidence—namely, that his brother-in-law and nephew were kidnapped and severely beaten by members of a drug cartel and freed only after family members paid a ransom.[1] The Board denied the motion, explaining that the immigration judge had considered the totality of the evidence and that Lopez

---

[1] Lopez Gamero later supplemented his motion with an affidavit from a family member stating that a suspicious person came to the house and asked for Lopez Gamero. The agency returned the supplemental filing, stating that it was not submitted by "[Lopez Gamero] or [his] attorney (with a EOIR-27 on file)." Lopez Gamero was not notified of this action until after the Board denied his motion to reopen. He labels this an "administrative error" but does not challenge the agency's reason for rejecting the filing.

Gamero had not demonstrated a "nexus" between his own circumstances and the kidnapping of his brother-in-law and nephew. The new evidence, the Board concluded, was not likely to change the outcome of the proceedings.

## II. Discussion

Lopez Gamero seeks review of both the removal order and the order denying his motion to reopen. Where, as here, the Board issues its own opinion rather than adopting or supplementing the immigration judge's opinion, we review only the Board's opinion. *Darif v. Holder*, 739 F.3d 329, 335 (7th Cir. 2014). Our standard of review is deferential; we will uphold the agency's decision as long as it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Weiping Chen v. Holder*, 744 F.3d 527, 532 (7th Cir. 2014). We decide questions of law independently, though we will defer to the Board's interpretation of an immigration statute if the statutory language is ambiguous. *Cruz-Moyaho v. Holder*, 703 F.3d 991, 997 (7th Cir. 2012). Finally, we review the Board's decision on a motion to reopen for abuse of discretion; relief is appropriate only if the decision "was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Victor v. Holder*, 616 F.3d 705, 708 (7th Cir. 2010).

Lopez Gamero presses three arguments in these consolidated petitions. He first argues that his state drug convictions do not qualify as "illicit trafficking" under § 1101(a)(43)(B) because the Illinois offenses do not require remuneration—i.e., a commercial transaction in drugs. He also challenges the Board's denial of his claim for deferral of

removal under the Convention Against Torture. Finally, he argues that the agency applied the wrong legal standard and abused its discretion when it denied his motion to reopen.

## A. Illicit Trafficking

The Immigration and Nationality Act provides that an alien who has been "convicted of an aggravated felony at any time after admission" is removable. 8 U.S.C. § 1227(a)(2)(A)(iii). The Act's definition of "aggravated felony" lists many crimes. *See generally id.* § 1101(a)(43). At issue here is "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug traffick-ing crime (as defined in section 924(c) of Title 18)." § 1101(a)(43)(B). Under § 924(c) the term "drug trafficking crime" includes "any felony punishable under the Con-trolled Substances Act." 18 U.S.C. § 924(c).

The phrase "illicit trafficking in a controlled substance" is not further defined, but the Board reads it to include "any state, federal, or qualified foreign felony conviction involv-ing the *unlawful trading or dealing* in a controlled substance as defined by Federal Law." *In re L-G-H-*, 26 I. & N. Dec. 365, 368 (BIA 2014) (quotation marks omitted). That is, the Board reads the term to require a commercial transaction or an exchange of drugs for remuneration. *Id.* at 371. In addition, the Supreme Court has said in dicta that the "commonsense conception" of illicit trafficking includes "some sort of commercial dealing." *Lopez v. Gonzales*, 549 U.S. 47, 53 (2006).

This creates an interpretive dilemma. The statutory defi-nition says that "illicit trafficking in a controlled substance" includes any drug-trafficking crime as defined in § 924(c), and the § 924(c) definition in turn sweeps in "*any* felony

punishable under the Controlled Substances Act." (Emphasis added.) But most felonies in the Controlled Substances Act do *not* require a commercial transaction—i.e., an exchange of drugs for remuneration. *See, e.g.*, 21 U.S.C. § 841(a)(1) ("[I]t shall be unlawful for any person knowingly or intentionally[] to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute or dispense, a controlled substance … .").

To resolve this tension, the Board has effectively split § 1101(a)(43)(B) into two parts: it treats a drug conviction as an aggravated felony if the offense satisfies the "commercial transaction" understanding of "illicit trafficking" *or* if the offense qualifies as a drug-trafficking crime as defined in § 924(c)—that is, if it is a felony under the Controlled Substances Act (or a state analog). *See Gerbier v. Holmes*, 280 F.3d 297, 304–06 (3d Cir. 2002) (detailing the Board's adoption of this approach). As the Board has explained, "the 'drug trafficking crime' clause is not a subset [of the term 'illicit trafficking'] in the usual sense[] because that phrase includes some offenses that do not involve a commercial aspect. Thus, the 'subset' is both broader and narrower than 'illicit trafficking.'" *In re L-G-H*, 26 I. & N. Dec. at 374 n.6.

Here the Board ruled that Lopez Gamero's Illinois convictions for possession of controlled substances (cocaine and marijuana) with intent to deliver mirror the analog felonies in the Controlled Substances Act. *Compare* 21 U.S.C. § 841(a)(1), (b)(1)(C), (b)(1)(D), *with* 720 ILL. COMP. STAT. 570/401(c)(2), 550/5(f). The Board accordingly held that his convictions qualify as drug-trafficking crimes under § 924(c) and, by extension, are properly classified as aggravated felonies under § 1101(a)(43)(B).

Lopez Gamero concedes that his Illinois convictions match the analog drug felonies in the Controlled Substances Act. He argues instead that his drug convictions do not qualify as "illicit trafficking" offenses because they do not involve remuneration. His argument proceeds in two steps. First, he invokes the "commercial" aspect of the term "illicit trafficking" mentioned in passing in the Supreme Court's dicta in *Lopez* and appearing more formally in the Board's decision in *In re L-G-H*. *See Lopez*, 549 U.S. at 53 (citing BLACK'S LAW DICTIONARY 1534 (8th ed. 2004)); *In re L-G-H*, 26 I. & N. Dec. at 368. Second, he contends that the phrase "drug trafficking crime" as used in § 1101(a)(43)(B) is a subset of "illicit trafficking." Putting the two parts of the argument together, he maintains that a felony punishable under the Controlled Substances Act (or a corresponding state offense) qualifies as an aggravated felony *only* if it involves remuneration.

We're not persuaded. To begin, the Court's dicta in *Lopez* cannot bear the interpretive weight Lopez Gamero assigns to it. As used in federal and state controlled-substances statutes, "trafficking" is a broad term casting a wide net and covering all manner of unlawful distribution of—and possession with intent to distribute—controlled substances, whether for value or otherwise. Few drug-trafficking felonies require proof of remuneration; it's improbable that § 1101(a)(43)(B) covers only these.

Moreover, the *Lopez* dicta must be read in context: the Court's reasoning actually forecloses Lopez Gamero's interpretation of § 1101(a)(43)(B). The conviction at issue there was a South Dakota felony for aiding and abetting another's possession of cocaine, which "state law treated as the equiv-

alent of possessing the drug." 549 U.S. at 53. But "[m]ere possession," the Court observed, is not a felony under federal law. *Id.* The Court explained that any drug felony as defined in § 924(c)—that is, any felony punishable under the Controlled Substances Act—"necessarily counts" as illicit trafficking. *Id.* at 55. However, because the South Dakota felony possession conviction would be a misdemeanor under the Controlled Substances Act, it did not qualify. *Id.* ("Unless a state offense is punishable as a federal felony[,] it does not count.").

So the Court's holding rests on the assumption that a conviction for a drug-related crime punishable as a felony under the Controlled Substances Act counts as an aggravated felony under § 1101(a)(43)(B) *regardless* of whether the crime entails remuneration. The Court made this point explicit in a footnote:

> Those state possession crimes that correspond to felony violations of one of the three statutes enumerated in § 924(c)(2), such as possession of cocaine base and recidivist possession, *see* 21 U.S.C. § 844(a), clearly fall within the definitions used by Congress in 8 U.S.C. § 1101(a)(43)(B) and 18 U.S.C. § 924(c)(2), *regardless of whether these* [*crimes*] *constitute "illicit trafficking in a controlled substance" or "drug trafficking" as those terms are used in ordinary speech.*

549 U.S. at 55 n.6 (emphasis added).

Alternatively, if the term "illicit trafficking" is ambiguous, the Board's interpretation of the statute is reasonable. *See Cruz-Moyaho*, 703 F.3d at 997 (applying *Chevron* deference

to the Board's interpretation of the Immigration and Nationality Act). The Board reads § 1101(a)(43)(B) to include both (1) illicit-trafficking crimes that involve remuneration and (2) drug-trafficking crimes as defined in § 924(c)—that is, any felony listed in the Controlled Substances Act (or a corresponding state offense). This interpretation tracks the Court's reasoning in *Lopez*. *See* 549 U.S. at 55 n.6. Accordingly, the Board properly classified Lopez Gamero's convictions as aggravated felonies under § 1101(a)(43)(B).

## B. Convention Against Torture

To qualify for deferral of removal under the Convention Against Torture, the claimant must establish that it is more likely than not that he will be tortured if removed. 8 C.F.R. §§ 1208.16(c)(2), 1208.17(a). Because the risk of torture is difficult to quantify, we've reframed the claimant's burden as a requirement to establish a "substantial risk" of torture if removed. *Perez-Montes v. Sessions*, 880 F.3d 849, 850 (7th Cir. 2018). The implementing regulations broadly define "torture" as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted upon a person." 8 C.F.R. § 1208.18(a)(1). The agency must consider all evidence relevant to the possibility of future torture. *Id.* § 1208.16(c)(3).

Lopez Gamero contends that the Board's decision is not supported by substantial evidence. That's a hard argument to win. The agency's decision satisfies the substantial-evidence standard unless the record as a whole *compels* the conclusion that the claimant faces a substantial risk of torture if removed. *See Abdoulaye v. Holder*, 721 F.3d 485, 490 (7th Cir. 2013).

Lopez Gamero's evidence amounts to a handful of suspicious incidents over a five-year span occurring at a home he didn't live in. He presented no corroborating evidence that these incidents occurred, and he and his witnesses could only speculate that a drug cartel was involved. His claim is similar to the one at issue in *Gutierrez v. Lynch*, 834 F.3d 800, 806 (7th Cir. 2016), where the evidence consisted of "random incidents of violence against [the claimant's] family members [that] happened years apart and are unrelated and not connected in any way to the [claimant]." We hold here, as we did in *Gutierrez*, that the Board's decision satisfies the substantial-evidence standard.

Lopez Gamero raises a handful of more specific challenges to the Board's decision. The first is an assertion that the Board failed to consider material evidence. The Board stated that there was "no evidence" of the identity of the harassers. The Board also said that his "entire case is speculative and lacking in objective support." As Lopez Gamero sees it, the Board must have overlooked key pieces of evidence or else it would not have made these statements. He points to the following parts of the record: his testimony describing the housekeeper's account of the break-in, the nature of the anonymous phone call, the evidence documenting cartel activity in the area, and the statements from his relatives and friends that "cartel members" were looking for him. But the Board did not overlook this evidence; it simply found it unpersuasive. *See Silais v. Sessions*, 855 F.3d 736, 743 (7th Cir. 2017) ("Silais's argument that the agency ignored or misconstrued [her expert's] evidence amounts to nothing more than frustration with the [immigration judge's] factual findings. Without more, we see no reason to disturb them.").

Lopez Gamero also argues that the Board applied the wrong legal standard when it characterized his burden of proof as "high and specific." That was a rough approximation of his burden. *See, e.g.*, *Lozano-Zuniga v. Lynch*, 832 F.3d 822, 830 (7th Cir. 2016) (describing the petitioner's burden as a "high bar"). And any arguable confusion is resolved in the very next sentence of the Board's decision. There the Board stated that Lopez Gamero must show a substantial risk of torture. That's a correct statement of the legal standard.

Finally, Lopez Gamero complains about the Board's analysis of three specific items of evidence. He contends that the Board improperly discounted his expert's opinion. The Board declined to credit the expert's testimony because it was "too speculative to be given much weight." We see no basis to second-guess that conclusion. The Board also stated that Lopez Gamero's continued home ownership in General Carlos Real cut against his claim of fear. That's one permissible way to view the evidence. Lastly, Lopez Gamero highlights a misstep by the immigration judge, who mistakenly commented that Lopez Gamero forgot certain dates during his testimony. The Board reasonably characterized this as a "minor misstatement [that] was not material to the [i]mmigration [j]udge's decision." In short, we find no reason to disturb the Board's determination that Lopez Gamero did not satisfy his burden on his claim for deferral of removal.

## C. Motion to Reopen

The Board has broad discretion over motions to reopen removal proceedings. *INS v. Doherty*, 502 U.S. 314, 323 (1992). It may, for example, deny a motion to reopen if: "(1) it is not supported by previously unavailable and material evidence; (2) it fails to establish the applicant's prima facie eligibility

for the underlying relief sought; or (3) the Board determines discretionary relief is not appropriate in the petitioner's case." *Boika v. Holder*, 727 F.3d 735, 738 (7th Cir. 2013). A prima facie case requires "sufficient evidence to demonstrate … a reasonable likelihood of success on the merits so as to make it worthwhile to develop the issues further at a full evidentiary hearing." *Id.* at 742.

Lopez Gamero sought to reopen the proceedings based on new evidence that his brother-in-law and nephew were kidnapped and beaten by members of a drug cartel. The Board denied the motion, explaining that Lopez Gamero did not "satisfy [his] heavy burden to show that if the proceedings were reopened or remanded, it would likely change the outcome." More specifically, the Board saw nothing in his motion to link the kidnapping to his own circumstances.

Lopez Gamero first argues that the Board applied the wrong legal standard. He points to 8 C.F.R. § 1003.2(c)(1), which provides that "[a] motion to reopen proceedings shall state the new facts that will be proven at a hearing." The regulation goes on to say that "[a] motion to reopen proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." *Id.* Lopez Gamero reads this language to mean that the Board *must* reopen the proceedings if the new evidence is material and was previously unavailable. That's a clear misinterpretation of the regulation, which establishes necessary—not sufficient—conditions for reopening.

Relatedly, Lopez Gamero challenges the Board's reliance on *In re Coelho*, which places the burden on the claimant to show that "if the proceedings were reopened and remanded,

it would likely change the outcome." 20 I. & N. Dec. 464, 472–73 (BIA 1992). Lopez Gamero maintains that this holding has been abrogated by 8 U.S.C. § 1229a(c)(7)(A)–(B). Not so. Section 1229a(c)(7) provides only that an alien has a right to *file* a motion to reopen if he meets the statutory requirements. As we've discussed, both Supreme Court precedent and the applicable regulations vest the Board with broad discretion over motions to reopen. *See Doherty*, 502 U.S. at 323; 8 C.F.R. § 1003.2(c)(1).

Lopez Gamero next argues that it was wrong as a legal matter for the Board to require a "nexus" between the kidnapping and his own circumstances. He explains that "nexus" is a term of art in immigration law. For example, in withholding-of-removal and asylum cases, an alien must show that his family members were targeted because of their familial relationship with the alien, *see In re L-E-A-*, 27 I. & N. Dec. 40, 43–47 (BIA 2017), but this requirement does not apply in applications for relief under the Convention Against Torture. This argument misunderstands the Board's use of the word "nexus." It was not a statement of the legal standard. The Board used the term to explain why the new evidence did not affect its analysis: Lopez Gamero had not shown that the kidnapping was related to the threats *against him*, so the new evidence was not likely to change the outcome.

Lopez Gamero argues in the alternative that his new evidence "directly refutes the basis" for the Board's decision to deny his claim for relief, so it was an abuse of discretion to decline to reopen the proceedings. We're not persuaded. The Board had a reasonable explanation for denying the motion: The violence against Lopez Gamero's extended family is not

sufficiently connected to threats against Lopez Gamero personally.

### III. Conclusion

In sum, the Board correctly classified Lopez Gamero's drug convictions as aggravated felonies under § 1101(a)(43)(B), and he is therefore removable based on those convictions. The Board's denial of his application for relief under the Convention Against Torture is supported by substantial evidence. Finally, the Board applied the proper legal standard and did not abuse its discretion in denying his motion to reopen. We DENY the petitions for review.