**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted January 27, 2021[*]
Decided January 28, 2021

**Before**

MICHAEL S. KANNE, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No.  20-1448

| | |
|---|---|
| PARVINDER SINGH, *Petitioner*, | Petition for Review of an Order of the Board of Immigration Appeals. |
| *v.* | No. A202-010-180 |
| MONTY WILKINSON, Acting Attorney General of the United States, *Respondent*. | |

**O R D E R**

Parvinder Singh, an Indian citizen belonging to a Sikh-dominated political party, petitions for review of an order of the Board of Immigration Appeals denying his motion to reopen his immigration proceedings based on changed country conditions—namely, increased police efforts to target him for his past political activity. The Board

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C). We have substituted Monty Wilkinson, the acting Attorney General, for the respondent. FED. R. APP. P. 43(c).

denied Singh's motion to reopen because he failed to show a material change in country conditions sufficient to warrant reopening. We deny the petition for review.

The prior proceedings are summarized in our decision, *Singh v. Barr*, 770 F. App'x 758 (7th Cir. 2019), but we highlight key details here. Singh belonged to a faction of Shiromani Akali Dal—a Sikh-dominated political party that advocates the creation of an independent nation in what is now the Indian state of Punjab. Singh's faction, Shiromani Akali Dal (Amritsar), also known as the Mann faction, was at odds with the dominant Badal faction in power in Punjab. Singh testified to three incidents from 2011 to 2014 when he was attacked either by police or adherents of the Badal faction while participating in political activities. After leaving India and making his way to the United States, he was detained by border security guards in Arizona. The Department of Homeland Security initiated removal proceedings, and Singh applied for asylum and withholding of removal based on the harm he feared in India by the Badal faction and the Indian government. He also sought protection under the United Nations Convention Against Torture.

The immigration judge denied all forms of relief, concluding that Singh was insufficiently credible, that his injuries did not amount to persecution, and that he could safely relocate within India if he returned. The BIA upheld that determination, and we denied his petition for review. *Id.*

Three months later, Singh moved to reopen his proceedings based on new evidence and changed country circumstances in India. *See* 8 C.F.R. § 1003.2(c)(1) (restricting proceedings to evidence that "could not have been discovered or presented at the former hearing"). He also sought a stay of removal. He maintained that Indian police falsely identified him as a terrorist affiliated with the Khalistani, another Sikh separatist group; raided his home in India looking for him; beat and administered electric shocks to his father; and told his family that they would be tortured if they did not turn him in. Singh supplemented his motion with his own affidavit and affidavits from a "cousin brother" and a village resident—all of which recounted these events and warned that violence would befall Singh if he returned to India. Singh also offered further detail on his role in the Mann faction, explaining that he helped with events and put up political posters. In addition to these affidavits, Singh also submitted news reports, which detailed law enforcement's efforts against a different Sikh group (Sikhs for Justice), and the State Department's 2018 human rights report for India. *See* U.S. DEP'T OF STATE, BUREAU OF DEMOCRACY, HUMAN RIGHTS AND LABOR, 2018 COUNTRY

REPORTS ON HUMAN RIGHTS PRACTICES: INDIA (2018), https://www.state.gov/reports/2018-country-reports-on-human-rights-practices/india/.

The Board denied the motion. Noting that in its prior decision it had upheld the IJ's adverse-credibility determination, the Board was "not persuaded" that Singh's evidence was previously unavailable, material, or probative of any past or future persecution. The affidavits (and other evidence), the Board stated, did "not rehabilitate [his] incredible testimony"—testimony that doomed his underlying claims—and otherwise were insufficient to establish a material change in conditions, let alone call into question the IJ's prior determination that he could relocate elsewhere within India.

Because Singh moved to reopen proceedings more than 90 days after his removal order issued, he had to show changed conditions in India, the country to which he was ordered removed. 8 U.S.C. § 1229a(c)(7)(A), (C); 8 C.F.R. § 1003.2(c)(3)(ii); *see Yahya v. Sessions*, 889 F.3d 392, 395 (7th Cir. 2018). Such evidence must be material, previously unavailable, and sufficient to establish his prima facie eligibility for the underlying relief sought. 8 U.S.C. § 1229a(c)(7)(C)(ii); *see Yahya*, 889 F.3d at 395; *Joseph v. Holder*, 579 F.3d 827, 833–34 (7th Cir. 2009).

In his petition, Singh first argues that the Board glossed over his new evidence and failed to justify its determination that he had not shown changed circumstances. In his view, his personal circumstances have changed significantly. He again points to the affidavits of the village resident and his "cousin brother"—evidence that, he says, corroborates his account of events and speaks to the continuing efforts of the Indian police to hunt for him, intimidate him, and torture him for his political views.

The Board did not abuse its discretion in rejecting this argument. We acknowledge that the Board's engagement with Singh's affidavits was cursory and conclusory: The Board did not explain, for instance, why the affidavits were insufficient to independently establish a claim or rehabilitate his discredited testimony. *See, e.g., Boika v. Holder*, 727 F.3d 735, 743 (7th Cir. 2013) (noting that the Board need not "forget the prior credibility finding" but granting the petition for review where the Board failed "to engage with the new evidence"). But the Board did support its determination with one appropriate basis—Singh failed to present sufficient evidence of materially changed conditions to establish that he could not internally relocate. *See Dieng v. Barr*, 947 F.3d 956, 961–63 (6th Cir. 2020) (upholding denial of motion to reopen where new evidence did not "overcome" determination that petitioner could internally relocate). One basis for the Board's original denial of relief was the fact that Singh already had twice

relocated safely within India, and it was reasonable to expect him to do so again. *Singh*, 770 F. App'x at 760. The agency raised that point again before the Board when opposing the motion to reopen, and none of Singh's submissions suggests that the police are looking for him outside his village in Punjab.

Singh also argues more generally that the Indian government has "escalated" its "persecution" of Sikh nationalists, as reflected in the Indian news reports he proffered and the 2018 U.S. Department of State's Human Rights Report on India. But this proposed new evidence, too, does not contradict the evidence on which the Board originally relied in concluding that he could relocate. Because the new evidence would not change the result, *Gamero v. Barr*, 929 F.3d 464, 471–72 (7th Cir. 2019), the Board did not abuse its discretion in denying his motion to reopen.

We have considered Singh's remaining arguments, and none has merit.

The petition for review is therefore DENIED.